**COMMITTEE FOR FULL EMPLOYMENT et al., Appellants,**

v.

**Michael W. BLUMENTHAL, Secretary of the Treasury, et al.**

**No. 77–1939.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 5, 1979.

Decided June 12, 1979.

Peter C. DePaolis, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Michael W. Farrell and Robert M. Werdig, Jr., Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

John O'Toole, Washington, D. C., with whom Burton D. Fretz, Howard S. Scher and Robert S. Catz, Washington, D. C., were on the brief, for appellants.

Before BAZELON and TAMM, Circuit Judges, and PARKER,* United States District Judge for the United States District Court for the District of Columbia.

Opinion for the Court filed by Circuit Judge BAZELON.

Opinion concurring in part and dissenting in part filed by Circuit Judge TAMM.

BAZELON, Circuit Judge:

Appellant individuals[1] and organizations[2] appeal from a decision of the district court dismissing their complaint that the Office of Revenue Sharing (ORS)[3] has failed to respond adequately to administrative complaints filed by appellants, and has continued to fund recipient governments that allegedly violate the civil rights provisions of the Revenue Sharing Act.[4] The

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. The named individual plaintiffs/appellants are two California residents who allege that they have been denied employment on the basis of their race.

2. The complaint names twelve organizational plaintiffs, all of whom either provide services, or represent the interests of racial and ethnic minorities in the communities whose governments allegedly are in violation of § 122(a) of the Revenue Sharing Act. Some of the organizations allege that some of their members·have been discriminated against by the recipient governments. *See, e. g.,* Affidavit of Raul Ceja,

President of El Pueblo Unido, ¶ 6 (J.A. 106–07), affidavit of Carlos Vasquez, Director of Casa Justica, ¶ 5 (J.A. 113–15). Some of the organizations have filed administrative complaints with ORS. *See* note 8, *infra.*

3. The Office of Revenue Sharing was created by order of the Secretary of the Treasury to exercise the Secretary's powers and responsibilities under the Revenue Sharing Act. *See* 31 C.F.R. § 51.1 (1978).

4. The Revenue Sharing Act is known officially as the State and Local Assistance Act of 1972, P.L. 92–512, 86 Stat. 919 *et seq., codified at* 31 U.S.C. § 1221 *et seq.* (1976), *as amended by* the State and Local Fiscal Assistance Amendments

district court concluded that none of the individual or organizational plaintiffs had standing to maintain this action. For the reasons that appear more fully below, we reverse the decision of the district court.

### I.

■ Section 122(a) of the Revenue Sharing Act[5] provides:

No person in the United States shall, on the ground of race, color, national origin, or sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity of a State government or unit of local government, which government or unit receives funds made available under [the Revenue Sharing Act].

Pursuant to that provision, the Secretary of the Treasury promulgated regulations that provided for the filing of administrative complaints by citizens against recipient governments alleged to be violating

§ 122(a).[6] Specifically, the original regulations, promulgated in 1975, provided:

Any person who believes anyone has been subjected to discrimination prohibited by this subpart, may personally or by a representative file with the Secretary a written statement setting forth the nature of the discrimination alleged and the facts upon which the allegation is based

. . . ..

(b) *Investigations* . . .. If the Secretary has reason to believe that the complaint shows that a recipient government has failed to comply with the provisions of this subpart, he will cause a prompt investigation to be made . . ..[7]

Appellants in this case alleged that they have filed charges pursuant to this provision against eight recipient governments and have had charges filed on their behalf against three additional recipients. Joint Appendix (J.A.) 150.[8] Appellants further

---

of 1976, P.L. 94–488, 90 Stat. 2341 *et seq.* The effect of the 1976 Amendments is discussed *infra* at note 6.

**5.** 31 U.S.C. § 1242(a) (1976).

**6.** The 1976 Amendments, *supra*, note 4, specifically incorporated into the Act procedures for filing complaints and the requirement of prompt investigation by the Secretary. *See* P.L. 94–488 § 7(b), 90 Stat. 2349–50, *codified at* 31 U.S.C. §§ 1244(d), 1245. This action was filed before the enactment of the 1976 Amendments, and the suit challenges expenditures made prior to the effective date of those amendments. Since the regulations promulgated by the Secretary are virtually identical to the added language, and have the force of law, we need not decide whether the instant action is governed by the Amendments, though we are mindful of the strong rule in favor of applying the law in effect at the time of decision, particularly where the statute is one to enforce civil rights. *See Bradley v. School Board of Richmond*, 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974); *Thorpe v. Housing Authority of Durham*, 393 U.S. 268, 281–83, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); *Womack v. Lynn*, 164 U.S.App.D.C. 198, 504 F.2d 267 (1974). In any event, the subsequent congressional ratification of the Secretary's regulations lends further support to appellants' claim that they have a legal right to prompt action on their complaint and that they are within the zone of interests both of the procedural and substan-

tive provisions of the Act and of its implementing regulations. *See* notes 14, 15 *infra*.

**7.** 31 C.F.R. § 51.57 (1976). Similar provisions now appear at 31 C.F.R. § 51.61 (1978), incorporating the specific statutory requirement that the Secretary act within 90 days after the filing of a complaint.

**8.** Which of the appellants have filed complaints does not appear with perfect clarity in the record. However, appellants' affidavits establish that at least some of them (or their members) have filed administrative complaints. *See, e. g.,* Affidavit of Magdaleno Botello, ¶ 1 (J.A. 95); Affidavit of Eduardo Rivera, Chairman of Concerned Citizens for Equal Employment, ¶ 6 (J.A. 100–01); Affidavit of Raul Ceja, President of El Pueblo Unido, ¶ 4 (J.A. 106); Affidavit of Ernesto Loredo, President of Tulare County Tenants' Union, ¶ 6 (J.A. 110); Affidavit of Carlos Vasquez, Director of Casa Justica, ¶ 3 (J.A. 112–13).

In addition, in its papers to this court, appellants suggest that complaints have also been filed by appellants NAACP, Sacramento Concilio Farmworkers Program, Huelga School Inc., Chicano Taxpayer's Association, Northside Community Design Center, and Latin American Union for Civil Rights. Although the moving papers in the district court allege that complaints were filed against the recipient governments where these organizations operate, the papers do not show clearly who filed

alleged that, to their knowledge, no action has been taken on these complaints other than a form acknowledgment of five of the charges. J.A. 151.

These allegations, uncontradicted by the government, are sufficient to confer standing on the complaining appellants to challenge ORS's inaction.[9] The agency's procedural regulations, which are binding on the agency,[10] entitle complainants to a review of their complaint by the Secretary and, if the complaint raises a colorable claim of violation, a prompt investigation. Complainants are injured if this procedural right is denied them, regardless of whether their complaint is ultimately found meritorious.[11]

Appellants therefore have established "injury in fact,"[12] for their stake in the litigation is a personalized one, not a generalized grievance. *See United States v. SCRAP*, 412 U.S. 669, 689 n. 14, 93 S.Ct. 2405, 2417 n. 14, 37 L.Ed.2d 254 (1973): " 'Injury in fact' reflects the statutory requirement that a person be 'adversely affected' or 'aggrieved,' and it serves to distinguish a person with a direct stake in the outcome of a litigation—even though small—from a person with a mere interest in the problem."[13] Appellants' complaint is specific to them: the complaints that they have filed with ORS have not received the attention due under the Act and regulations. A court can redress appellants' injury, *see Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), by, *e. g.*, ordering ORS to process promptly appellants' complaints and otherwise comply with the applicable regulations. Appellants are clearly

the complaints. Assuming that these organizations did in fact file complaints (a question which the district court should address on remand), the decision of the district court, that these organizations "have failed to allege that they have suffered concrete, specific injury . . . ." (supra at 1064) must be reversed.

9. Appellants did not present their theory of harm to their procedural rights at any length in the original memorandum on standing, *see* Pl. Pts. and Authorities in Opposition to Motion to Dismiss at 26 (J.A. 87), and the district court did not discuss this ground for standing in its opinion. On motion for reconsideration, however, appellants briefed this point extensively. The district court denied the motion for reconsideration without opinion. *Committee for Full Employment v. Simon*, No. 76–0467 (D.D.C. July 28, 1977) (J.A. 169).

10. *See Thorpe v. Housing Authority of Durham*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); *Vitarelli v. Seaton*, 359 U.S. 535, 539–40, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); *see generally* K. Davis, Administrative Law Treatise § 5.03–5 (1978 Supp.).

11. On many occasions we have reviewed agency action or inaction at the request of a party who alleged that its procedural rights (as created either by the agency's own regulations, or the Administrative Procedure Act) had been violated. *See, e. g., Rodway v. United States Department of Agriculture*, 168 U.S.App.D.C. 387, 514 F.2d 809 (1975) (plaintiffs successfully challenged USDA failure to comply with the APA in promulgating coupon allotment system under the Food Stamp Act); *Environmental Defense Fund v. Hardin*, 138 U.S.App.D.C. 391, 428 F.2d 1093 (1970) (environmental groups had standing to challenge USDA's failure to take any action on petition to restrict use of DDT). Complainants have a "legal right" to have their complaint processed promptly, and the Secretary's failure to do so constitutes a "legal wrong" which entitles them to judicial review. *See* 5 U.S.C. § 702 (1976).

The United States' only response to this argument is reliance on *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). *Sanders* held only that § 10 was not an independent grant of jurisdiction to the federal courts. But appellants do not base jurisdiction on § 10 of the APA. Rather, jurisdiction is grounded, *inter alia*, on 28 U.S.C. § 1331 (1976) (federal question jurisdiction). Nothing in *Sanders* suggests that § 10 does not grant a cause of action to one suffering a legal wrong within the meaning of a relevant statute at the hands of an agency, so long as there is an independent statutory basis for jurisdiction.

12. The United States also disputes that appellants satisfy the "injury in fact" requirement. *See* Br. for Resp. at 18.

13. *See Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979): "In order to satisfy Art. III, the plaintiff must show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Compare Sierra Club v. Morton*, 405 U.S. 727, 735, 739, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

within the "zone of interests"[14] both of the statute and of the applicable procedural regulations that appellants claim have been violated.[15]

## II.

Even as to those appellants who have not filed administrative complaints with ORS,[16] the district court's dismissal for lack of standing was premature. Appellants have alleged that the recipient jurisdictions are dependent on revenue sharing funds to carry out vital municipal activities.[17] They have also alleged that because the recipient governments are under an independent obligation not to discriminate in the provision of services, the governments do not have the option of declining the revenue sharing funds, and continuing to practice the discriminatory activities.[18] Moreover, the appellants have adduced evidence that initiat-

ing federal fund termination proceedings has in the past been highly effective in gaining compliance with federal antidiscrimination laws.[19] All of these allegations are uncontradicted by the United States. The mere fact that ultimate relief to the appellants depends on the actions of third parties does not, by itself defeat appellants' standing, so long as they can establish a "substantial likelihood" that the relief they request will eliminate the asserted injury. *See Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 75 n. 20, 98 S.Ct. 2620, 2631 n. 20, 57 L.Ed.2d 595 (1978). "Our recent cases have required no more than a showing that there is a 'substantial likelihood' that the relief requested will redress the injury claimed to satisfy the second prong of the constitutional standing requirement [that the court's remedial powers would redress the claimed injuries]."

**14.** *Assoc. of Data Processing Organizations v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Barlow v. Collins*, 397 U.S. 159, 164, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). It is beyond dispute that § 122(a) is intended to protect the rights of minorities in the recipient communities. *See United States v. Chicago*, 549 F.2d 415, 439–40 (7th Cir. 1977).

**15.** The clear intent of the statute and implementing regulations to assure plaintiffs a prompt response to their complaint is central to the standing inquiry. " 'Congress may not confer jurisdiction on Art. III federal courts to render advisory opinions.' *Sierra Club v. Morton*, 405 U.S. 727, 732 n. 3, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). But Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." *Linda R. S. v. Richard D.*, 410 U.S. 614, 617 n. 3, 93 S.Ct. 1146, 1148 n. 3, 35 L.Ed.2d 536 (1973).

The Senate Report on the 1976 Amendments observed:

The committee felt it was necessary to establish specific time limits within which the Office of Revenue Sharing and the Department of Justice should respond to complaints filed by any person alleging that a recipient is violating the nondiscrimination provision. The committee decided that in the event both the Office of Revenue Sharing and the Department of Justice failed to affirmatively respond to a person's complaint within these time limits, the person should then have the right to seek relief in court.

S.Rep. No. 1207, 94th Cong., 2d Sess. 34 (1976). *See also* H.R.Rep. No. 1720, 94th Cong., 2d Sess. 38 (1976) (conference report), U.S.Code

Cong. & Admin.News 1976, p. 5151 discussing the requirement that the Secretary of the Treasury promulgate regulations establishing specific time limits for acting on complaints. *Compare Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972).

**16.** *See* note 8 *supra.*

**17.** *See, e. g.*, Affidavit of Ian Fan, J.A. 120–22; Pl. Br. on Reconsideration at 9 (J.A. 156).

**18.** Pl. Points and Authorities in Opp. to Motion to Dismiss at 17 (J.A. 78). *Compare Simon v. EKWRO*, 426 U.S. 26, 43, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976).

**19.** Pl. Br. on Reconsideration at 9 (J.A. 156).

Courts on several occasions have granted relief to plaintiffs who sought to compel administrative fund termination or other civil rights enforcement activities under statutes similar to § 122(a). *See, e. g., Adams v. Richardson*, 156 U.S.App.D.C. 267, 480 F.2d 1159 (1973) (en banc) (per curiam) (suit by black students, citizens and taxpayers to compel HEW to enforce Title VI of the Civil Rights Act against educational institutions receiving federal funds); *Hills v. Gautreaux*, 425 U.S. 284, 96 S.Ct. 1538, 47 L.Ed.2d 792 (1976), *aff'g, Gautreaux v. Romney*, 448 F.2d 731 (7th Cir. 1971) (suit by black tenants in or applicants for public housing in Chicago to enjoin Department of Housing and Urban Development from funding projects tending to perpetuate segregated housing).

In *Duke Power*, the appellees' standing was challenged on the grounds that there was no showing that declaring the Price-Anderson Act unconstitutional would necessarily eliminate nuclear reactors. The Nuclear Regulatory Commission argued that, even in the absence of the Act, private companies might still build reactors, or alternatively, the United States itself might engage in nuclear power generation.

Although enactment of Price-Anderson was not a logically necessary condition to the existence of nuclear reactors, the Court held that the "documentary evidence and testimony in the record," *id.* at 77, 98 S.Ct. at 2633, adduced by the environmental group, was sufficient to establish that *in fact* nuclear plants might not be built. In this case the appellants have adduced facts, uncontradicted by the government, that tend to show that the recipient governments would end discrimination rather than risk the loss of revenue sharing funds.[20]

At the very least, appellants were entitled to conduct discovery to buttress their allegation that there is a substantial likelihood that the relief they request will eliminate their injury. Their pleadings are not so deficient on their face, nor so implausible, that the district court was entitled to conclude the standing issue on a motion to dismiss.[21]

### III.

The district court denied standing to certain of the organizational plaintiffs as representatives of their members, concluding that representative standing is permissible only "where it is difficult, if not impossible for the person whose rights are being asserted to present his grievances to the court, or there is a compelling need to grant third-party standing to protect the constitutional rights of parties not before the court." Slip op. at 8. This formulation does not correctly express the law of standing as applied to an organization that seeks to represent its members. In *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 2212, 45 L.Ed.2d 343 (1975), the Court made clear that the test for representational standing for an organization is similar to that for an individual member: "The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." The only additional limitation would arise if individual members of the organization were indispensable parties to the suit, a factor not present here. *See also National Ass'n of Neighborhood Health Centers v. Mathews*, 179 U.S.App.D.C. 135, 141–42, 551 F.2d 321, 327–28 (1976); *Public Citizen v. Lockheed Aircraft Corp.*, 184 U.S.App.D.C. 133, 139, 565 F.2d 708, 714 (1977).[22]

**20.** *See also Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), where the Court held: 1) a non-profit housing developer had standing to challenge exclusionary zoning practices, even though elimination of those practices did not guarantee that the developer's proposed project would in fact be built, *id.* at 261–62, 97 S.Ct. 555 and 2) a prospective low-income tenant had standing to challenge the zoning practices because he would qualify for proposed project, even though there was no guarantee that the project would be built, or that plaintiff would be selected to live there if the project was built. *Id.* at 264, 97 S.Ct. 555. *Compare Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

**21.** Here, as in *United States v. SCRAP, supra*, 412 U.S. at 689, 93 S.Ct. at 2416, we deal "simply with the pleadings in which the [plain-

tiffs] alleged a specific and perceptible harm that distinguished them from other citizens . . . ." Under these circumstances, concluding the standing issue on a motion to dismiss (instead of a motion for summary judgment) is erroneous, at least where the pleadings are more "than an ingenious academic exercise in the conceivable." *Id.* at 688–90 & n. 15, 93 S.Ct. at 2416. On the motion for summary judgment, the government would have the opportunity to controvert the factual allegations which, on their face in the pleadings, tend to show a substantial likelihood that appellants' injuries will be redressed by the relief in question.

**22.** The United States also argues for the first time on appeal that appellants have failed to exhaust their administrative remedies. We believe this argument is best addressed initially by the district court.

The order of the district court is therefore reversed, with directions to reinstate appellants' complaint.

*It is so ordered.*

TAMM, Circuit Judge, concurring in part, dissenting in part:

I am in full agreement with the majority, for the reasons set forth in parts II and III of Judge Bazelon's opinion, that the order of the district court should be reversed. I am unable to concur in part I of the majority opinion, however, because of my belief that standing to sue in federal court must be based on more than allegations of violations of procedural regulations by an agency. In my view, injury to an underlying substantive interest must be alleged. Thus, in this case, standing is based on alleged harm resulting from discrimination rather than alleged violation of procedural regulations by the Secretary of Treasury.