**NATIONAL TREASURY EMPLOYEES UNION, Plaintiff,**

v.

**Donald DEVINE, Defendant.**

**Civ. A. No. 83–2261.**

United States District Court, District of Columbia.

Dec. 23, 1983.

Lois G. Williams, Director of Litigation, Sharyn Danch, Nat. Counsel, and Michael Barkow, Asst. Counsel, Washington, D.C., for plaintiff.

J. Paul McGrath, Asst. Gen. Counsel, Stanley S. Harris, U.S. Atty., Paul Blankenstein, and Linda Cromwell, Washington, D.C., for defendant.

CHARLES R. RICHEY, District Judge.

Plaintiff, National Treasury Employees Union ("NTEU"), seeks declaratory, injunctive, and mandamus relief, alleging that defendant Donald Devine, Director of the Office of Personnel Management ("OPM"), violated the Civil Service Reform Act of 1978 by failing to post the text of proposed regulations in federal offices in accordance with 5 U.S.C. § 1103(b)(2)(A) and by promulgating regulations at 5 C.F.R. Part 110 which are contrary to the Act. Upon consideration of cross-motions for summary judgment and memoranda in support and opposition, the court has determined that there are no genuine issues of material fact and that defendant is entitled to summary judgment on the merits.

The regulations at the center of this dispute were published in the Federal Register on July 14, 1983, and concern the implementation of a performance-based incentive system, 48 Fed.Reg. 32288, changes to federal reduction-in-force procedures, 48 Fed. Reg. 32303, and changes in the application and interpretation of the Fair Labor Standards Act exemption standards for federal employees, 48 Fed.Reg. 32290. The parties agree that this publication fulfilled defendant's duties under 5 U.S.C. § 1103(b)(1). Their conflict arises over the defendant's actions to fulfill his obligations under § 1103(b)(2)(A), which provides that:

> [t]he Director shall take steps to ensure that—(A) any proposed rule or regulation to which paragraph (1) of this subsection applies is posted in offices of Federal agencies maintaining copies of the Federal personnel regulations...

Pursuant to this subsection, OPM adopted regulations at 5 C.F.R. Part 110. The parties agree, once again, that OPM complied with its own regulations governing the posting of its July 14th proposals. The proposed rules were forwarded, as part of "posting bulletins," to 98 agencies at 1,470 locations. These bulletins contained the text of the proposed rules, sample notices of them for agencies to fill out and post, and cover memoranda to agency officials instructing them on the statutory and regulatory posting requirements. Although OPM does not routinely monitor agency compliance, it took two additional steps with regard to the July 14th proposals, having been alerted through earlier litigation of lapses at certain agencies.[1] First, between July 21 and August 18, 1983, OPM officials contacted personnel officials at seven locations where posting deficiencies had previously been alleged, in order to ensure compliance. Second, a letter was sent on September 2, 1983, to the personnel directors of all federal agencies required to post regulations, reminding them of their obligations.

## PLAINTIFF UNION HAS STANDING TO SUE

■ Before addressing the question of whether OPM's regulations and activities satisfy the statutory mandate of § 1103(b)(2)(A), the court must find that plaintiff has standing to bring this suit. It is well-established that the standing doctrine has both constitutional and prudential dimensions. *Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); *Community Nutrition Institute v. Block*, 698 F.2d 1239 (D.C.Cir.1983). For an association to have standing to sue on behalf of its members, it must show that:

(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are ger-

mane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977).

■ NTEU has met its burden in this case, where only the first element, its members' rights to sue, has been seriously questioned. Defendant's alleged failure to fulfill adequately his posting obligations would impair the rights of plaintiff's members to receive notice and to comment upon proposed regulations. Although the responsibility for the alleged failures may be shared by OPM and agencies, it is still fairly traceable to defendant's actions and likely to be redressed by a judicial remedy in this case. *See American Association of Travel Agents, Inc. v. Blumenthal*, 566 F.2d 145 (D.C.Cir.1977). Plaintiff's allegations amount to "injury in fact" even though the harm is to its members' procedural rights. *Committee for Full Employment v. Blumenthal*, 606 F.2d 1062, 1065 (D.C.Cir.1979). Any "identifiable trifle of harm" will suffice. *Travel Agents*, 566 F.2d at 156, citing *United States v. SCRAP*, 412 U.S. 669, 689 n. 14, 93 S.Ct. 2405, 2415 n. 14, 37 L.Ed.2d 254 (1977). *See also NTEU v. Campbell*, 589 F.2d 669 (D.C.Cir.1978); *NTEU v. Nixon*, 521 F.2d 317 (D.C.Cir.1975) (recognizing union standing).

## OPM's REGULATIONS AND ACTIONS COMPLY WITH STATUTORY REQUIREMENTS

■ Plaintiff claims that OPM's regulations are contrary to the statute in that they 1) share the director's posting responsibility with federal agencies; 2) permit the posting of notice rather than full text; and 3) permit posting even after the comment period. Recognizing that an agency's interpretation of its own statute is entitled to "great deference," *EPA v. Crushed Stone Association*, 449 U.S. 64, 83, 101 S.Ct. 295,

**1.** NTEU initiated a prior action challenging the procedures used in connection with proposed regulations promulgated on March 13, 1983. That case was dismissed as moot when OPM

withdrew its regulations. The July 14th regulations involved in this case are substantially the same as those previously disputed.

306, 66 L.Ed.2d 268 (1980), the court finds that neither the language of the statute (quoted above) nor its legislative history support plaintiff's position.

First, the language of the statute distinguishes between the director's obligations under § 1103(b)(1), concerning the *publication* of proposed rules, and his obligations under § 1103(b)(2)(A), concerning *posting*. The first subsection provides that "[t]he Director *shall* publish" (emphasis added)—indicating that it is his sole responsibility—while the next subsection provides that "[t]he Director *shall take steps to ensure* that—(A) any proposed rule or regulation ... is posted in the offices of Federal agencies"—indicating that a joint effort is required. Further, the statute does not contain any express timing provisions. Finally, its language is susceptible to OPM's interpretation that posting less than the full text, "in a prominent place ... which best fits their physical layout" is a satisfactory method of implementation. 5 C.F.R. § 110.102(b).

The legislative history also lends support to defendant's case. An amendment offered on the floor to the House version placed all responsibility on the agencies to post material. House Committee on Post Office & Civil Service, *Legislative History of the Civil Service Reform Act of 1978*, Comm. Print No. 96–2, 96th Cong., 1st Sess. 7, 882–83 (*"Legislative History"*); 124 *Cong.Rec.* H. 9379 (daily ed. September 11, 1978). In contrast, the Senate version placed the burden solely on the director of OPM, stating that "the Director *shall insure* that ... the proposed rule or regulation is posted...." *Legislative History* at 1657; 124 *Cong.Rec.* S. 14292 (daily ed. August 24, 1978) (emphasis added). The final, compromise version reflects a switch to *joint* OPM and agency responsibility by changing the Senate language—"shall insure"—to "shall take steps to ensure ..."

Given the practical difficulties of effecting posting at over 1,000 different agency locations, this shared burden is eminently sensible. So too is the decision to permit the posting of bulletins rather than full text, which could easily overwhelm employees with excessive detail and, in fact, hamper the dissemination of useful information. Absent an express timing provision concerning posting in the statute, the court declines to read one in, *see Vermont Yankee Nuclear Power Corp. v. National Resources Defense Council*, 435 U.S. 519, 524, 98 S.Ct. 1197, 1202, 55 L.Ed.2d 460 (1978), and agrees with OPM's position that the section's thrust is to facilitate *notice*, rather then to solicit *comments*. Publication in the Federal Register remains the primary mechanism for providing notice and eliciting comments.[2] 5 U.S.C. § 1103(b)(1).

## CONCLUSION

For the reasons stated above, the court grants defendant's motion for summary judgment and will enter an order accordingly, of even date herewith.

---

**2.** Nonstatutory means of notice were present in this case as well: the proposed regulations were reported in plaintiff's newsletter to its members and in the mass media.