Primitivo **ARTEAGA**, individually and on behalf of all persons similarly situated, Plaintiff,

v.

Richard **LYNG**, Secretary of the United States Department of Agriculture, Defendant.

No. 86–939–CIV–T–15(C).

United States District Court, M.D. Florida, Tampa Division.

March 26, 1987.

Nora Leto, Robert T. Connolly, Florida Rural Legal Services, Inc., Bartow, Fla., for plaintiff.

Dennis Moore, Asst. U.S. Atty., Tampa, Fla., Paul C. Loizeaux, Office of the General Counsel, U.S. Dept. of Agriculture, Washington, D.C., for defendant.

## ORDER

CASTAGNA, District Judge.

On May 20, 1986, the Farmers Home Administration (FmHA) amended its regulation providing for the disposal of unsuitable property, 7 C.F.R. Part 1955 (1984), to allow a 90 day sale of unsuitable single family houses at favorable terms to purchasers (the "Summer Sale"). Plaintiff, a low-income resident of Polk County, Florida, and an eligible purchaser under § 502 of the Housing Act of 1949, as amended by § 503 of the Rural Housing Amendments of 1983 [42 U.S.C. § 1472], complains that the Summer Sale is illegal and seeks declaratory and injunctive relief. Two of the grounds raised by plaintiff merit discussion here. First, plaintiff alleges that the rule authorizing the Summer Sale was promul-

gated without notice and opportunity to comment as required by § 553(d) of the Administrative Procedures Act, 5 U.S.C. §§ 551–76, and by § 523 of the Housing Act of 1949, as amended by § 534 of the Rural Housing Amendments of 1983, 42 U.S.C. §§ 1471–90, 1490 n. Second, plaintiff contends that the regulation by which the houses subject to the Summer Sale are determined to be "unsuitable," 7 C.F.R. § 1955.63 (1984), fatally conflicts with the goals of the Farm Housing Act. Pending before the Court are plaintiff's motion for partial summary judgment, defendant's motion for summary judgment, and plaintiff's motion to allow intervention.

■ At first blush this case would appear to require dismissal under the doctrine of mootness.[1] In general, constitutional and prudential concerns preclude a court's consideration of cases no longer presenting a live issue. *See, e.g., Preiser v. Newkirk,* 422 U.S. 395, 401–04, 95 S.Ct. 2330, 2334–35, 45 L.Ed.2d 272 (1975); *see generally* 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3533 at 211–301 (2d ed. 1984). Indeed, as to the original named plaintiff, Primitivo Arteaga, this case is moot since Mr. Arteaga has found satisfactory housing through the § 502 program (Reply memorandum at 2 n. 1, 5) and, thus, would no longer benefit from the relief requested. *See Weinstein v. Bradford,* 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (case moot where plaintiff attains full relief through other means). Accordingly, all further analysis of this case will be restricted to its impact on the intervenors, Ellie and Irmgard Meridon.

Even as to these new plaintiffs the case appears moot for several reasons. First, the Summer Sale by its own terms ended on August 29, 1986. *See Florida Wildlife Federation v. Goldschmidt,* 611 F.2d 547, 549 (5th Cir.1980). (completion of disputed event moots case). Second, even the sale of the four Polk County homes eligible for

---

1. Although the parties have not raised the issue of mootness, the issue implicates the Court's jurisdiction and, therefore, must be raised on the Court's own motion. *St. Paul Fire & Marine Ins. Co. v. Barry,* 438 U.S. 531, 537, 98 S.Ct. 2923, 2927, 57 L.Ed.2d 932 (1978). In addition, plaintiff implicitly recognizes the mootness problem in his reply memorandum (D 29 at 7–8) and in his motion to permit intervention (D 30).

the Summer Sale appears a *fait accompli* in light of the pending sales contracts (Declaration of Joan Chinn at 2). Finally, the plaintiffs do not claim any "continuing impact" from the Summer Sale, which is to say that they claim no damages incurred as a result of defendant's allegedly unlawful conduct. *See Dudley v. Stewart*, 724 F.2d 1493, 1494–95 (11th Cir.1984) (claim for money damages not moot despite cessation of unlawful circumstances).

■ Upon closer examination, however, this seemingly moribund controversy presents justiciable issues. The mootness doctrine does not apply to expired official actions that are "capable of repetition ... yet evading review." *Board of Education v. Rowley*, 458 U.S. 176, 186 n. 9, 102 S.Ct. 3034, 3041, n. 9, 73 L.Ed.2d 960 (1982); *Southern Pacific Terminal Co. v. Interstate Commerce Commission*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). In determining whether a case is capable of repetition yet evading review, the following factors guide the court's inquiry: 1) the likelihood of recurrence, *see, e.g., Spivey v. Barry*, 665 F.2d 1222, 1234–35 (D.C.Cir.1981); 2) the likelihood that any recurrence will again escape review, *see, e.g., Monzillo v. Biller*, 735 F.2d 1456, 1460 (D.C.Cir.1984); 3) the effect on the plaintiff before the court in the event of a recurrence, *see, City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06, 103 S.Ct. 1660, 1666–67, 75 L.Ed.2d 675 (1983). *See generally* 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3533.8 at 370–91 (2d ed. 1984).

■ Here all of the factors militate against mootness. The Summer Sale, while by its terms only a one-time occurrence, is capable of repetition, especially so since "unsuitable" homes continue to accumulate in the FmHA inventory, and since defendant maintains that the expired regulation was entirely lawful. Since advance notice of the sale is not required, and since the sale lasts for such a brief period, any future sale is again likely to escape review.

*See Board of Education v. Rowley*, 458 U.S. at 186 n. 9, 102 S.Ct. at 3041 n. 9 (no mootness where judicial review likely to take longer than government action). The plaintiffs, who have already waited a long time for decent housing,[2] are likely to be affected by any future sale. Plaintiffs are at least likely to feel the continued sting of the allegedly unlawful regulation since any Polk County houses coming into the FmHA inventory will be subject to the disputed standard for determining "suitability."

In his response to plaintiffs' motion for partial summary judgment and in his own motion for summary judgment, the defendant, without citation to case law or statute, raises the fundamental issue of plaintiffs' standing. To establish standing a potential suitor must show "at an irreducible minimum ... that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, ... and that the injury can be fairly traced to the challenged action and is likely to be redressed by a favorable decision." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (quotations omitted). Defendant contends plaintiffs have suffered no injury-in-fact.

■ As to count III of the amended complaint, defendant's objection to plaintiffs' standing is well-taken. In count III plaintiffs complain that the Summer Sale advertisements do not contain the notice required by the regulation at 7 C.F.R. § 1955.116 (1984). That regulation requires the FmHA to advise all potential purchasers if an advertised house does not meet decent, safe, and sanitary standards. Plaintiff is not among that class of persons—potential purchasers—which the regulation seeks to protect. Indeed, the whole *raison d'être* of this lawsuit is plaintiffs' inability to meet the purchase terms of the Summer Sale (Memorandum in support of motion for partial summary judgment at 4). Additionally, the Court can divine no causal

---

**2.** According to plaintiffs' motion for partial summary judgment, the original plaintiff, Mr. Arteaga, waited "for years" before finding a suitable § 502 home (Memorandum in support at 4).

link between the regulation at issue and the lack of adequate housing in Polk County.

Nor can plaintiffs show substantive injury as to their claim that they were given no notice or opportunity to comment on the Summer Sale regulation. The injury claimed by plaintiffs—loss of opportunity to purchase a decent house—bears too tenuous a relationship to the lost opportunity to comment to support plaintiffs' standing; the Court would be required to indulge several assumptions, unwarranted in either logic or the facts of this case, to conclude that the opportunity to comment would result in an available house. But the lack of a substantive injury does not end the Court's inquiry.

■■■ Those who can show denial of a federally-created procedural right are entitled to litigate their claims in federal court. *See, e.g., Georgia Association of Retarded Citizens v. McDaniel,* 716 F.2d 1565, 1572 (11th Cir.1983). Where Congress creates the right for interested persons to comment on proposed regulations, the denial of this procedural right constitutes injury-in-fact to the interested party. *Dellums v. Smith,* 797 F.2d 817, 821 (9th Cir.1986); *National Conservative Political Action Committee v. Federal Election Commission,* 626 F.2d 953, 957 (D.C.Cir.1980). Plaintiffs asserting this injury-in-fact have standing to sue even if their underlying claim is ultimately found meritless. *Committee for Full Employment v. Blumenthal,* 606 F.2d 1062, 1065 (D.C.Cir.1979). As rural poor seeking adequate housing, plaintiffs have an interest in commenting on regulations controlling the availability of housing which certainly falls within the "zone" protected by the Farm Housing Act. *See Alvarez v. Longboy,* 697 F.2d 1333, 1336 (9th Cir.1983). Plaintiffs have expressed their desire to comment on the rule implementing the Summer Sale, but have been afforded no opportunity to do so.

This "procedural injury" suffices to support plaintiffs' standing in this Court.

■■ As to their claim that the regulations defining unsuitable housing are unlawful, plaintiffs have alleged *substantive* injury. According to the amended complaint the three Polk County homes sold through the Summer Sale [3] should have been made available to plaintiffs. According to defendant, however, these three homes reasonably were determined to be "unsuitable" for retention in the § 502 program. Like the defendant in *Georgia Association of Retarded Citizens v. McDaniel,* the defendant here

confuses the sufficiency of proof with the adequacy of an asserted interest. Plaintiffs have claimed injury-in-fact and thus have standing to bring this law suit. It is unnecessary to decide whether plaintiffs' allegation of harm ... will ultimately entitle them to any relief in order to hold that there is a sufficient controversy here.

716 F.2d at 1572. The factual dispute as to the suitability of the eligible houses can only be resolved on the merits. Accordingly, defendant's motion for summary judgment must be denied as to counts I, II, IV, and V.

Having found a justiciable issue and plaintiffs' standing to press it, the Court must now turn to the merits of plaintiffs' claim that execution of the Summer Sale without notice and an opportunity to comment was unlawful.[4] According to plaintiffs, the regulation authorizing the Summer Sale, 51 Fed.Reg. 18435–36 (1986), was subject to the notice and comment provisions of 5 U.S.C. § 553(d) and 42 U.S.C. § 1490n. Section 553(d) of the Administrative Procedures Act provides for publication for not less than 30 days before its effective date of any substantive rule promulgated by an administrative agency. Section 1490n of Title 42 provides for publi-

---

**3.** The fourth house originally earmarked for the Summer Sale was apparently sold through other means (*see* Memorandum in opposition to preliminary injunction at 3).

**4.** In his response to plaintiffs' motion for summary judgment defendant did not address the merits of plaintiffs' claim. Those merits were addressed in defendant's response to the motion for preliminary injunction, however, and the Court has considered that memorandum here.

cation for at least 60 days, and publication in final form for at least 30 days, of any rule or regulation enacted pursuant to the Farm Housing Act.

■ The Court has little difficulty in finding that the rule authorizing the Summer Sale is exempt from the publication requirements of 5 U.S.C. § 553(d). Under § 553(a)(2) all regulations relating to "public property, loans, grants benefits, or contracts[ ]" are exempt from notice and publication. The regulation at issue here related to property held in the FmHA inventory. In addition, § 553(d) itself permits an agency to ignore the publication requirements "for good cause found and published with the rule." The Summer Sale rule showed "good cause" by reference to the government's high cost of retaining unsuitable homes and the need to dispose of such homes promptly. 51 Fed.Reg. 18435 (1986).

The Secretary argues that the Summer Sale rule is similarly exempt from the publication requirements of 42 U.S.C. § 1490n. According to defendant, in enacting § 1490n Congress meant only to codify the policy, announced by former Secretary of Agriculture Clifford Hardin, of voluntarily publishing FmHA regulations in accordance with 5 U.S.C. § 553(d), even though those regulations generally were exempt under § 553(a). Under the "Hardin Statement," 36 Fed.Reg. 13804 (1971), all FmHA regulations were to be published for 60 days before enactment, but the Secretary retained discretion to exempt a regulation for good cause.

■ Perhaps the Secretary is correct, and codification of the Hardin Statement is the statute Congress intended to enact. But it is *not* the statute Congress enacted. Section 1490n, in its entirety, reads:

(a) Notwithstanding any other provision of law, no rule or regulation pursuant to this title [42 USCS §§ 1471 et seq.] may become effective unless it has first been published for public comment in the Federal Register for at least 60 days, and published in final form for at least 30 days.

(b) The Secretary shall transmit to the chairman and ranking Member of the Committee on Banking, Housing, and Urban Affairs of the Senate and the Committee on Banking, Finance and Urban Affairs of the House, all rules and regulations at least 15 days before they are sent to the Federal Register for purposes of subsection (a).

(c) The provisions of this section shall not apply to a rule or regulation which the Secretary certifies is issued on an emergency basis.

As can be seen, § 1490n is Spartan in its allotment of exemptions—only regulations that the Secretary certifies as issued on an emergency basis are excused.

■ In this action the defendant maintains that the disputed regulation was issued on an emergency basis. Defendant, without citation to any authority, asserts that " 'emergency basis' ... does not mean that an actual emergency has to exist, but means that there is some reason that the regulation must be issued without delay." (Memorandum in opposition to preliminary injunction at 11). In effect, defendant asks the Court to define "emergency" as "good cause." But this definition of "emergency" defies any common understanding of what that term implies. *See Black's Law Dictionary* 469 (5th ed. 1979). And in the absence of any legislative history supporting defendant's position, the Court refuses to yoke such a tortured interpretation upon the plain meaning of the words used by Congress. *See Tennessee Valley Authority v. Hill,* 437 U.S. 153, 173 & n. 18, 98 S.Ct. 2279, 2291 & n. 18, 57 L.Ed.2d 117 (1978).

■ Even if the Court were to accept this interpretation, however, the regulation at issue here would still fail to make the grade. Section 1490n requires not only that the regulation be issued on an "emergency basis," but also that the Secretary *certify* it as such. Here, the Secretary did not certify the regulation as being issued on an emergency basis; instead he relied on an "internal agency management" exception to the publication requirements (a position apparently abandoned here). Be-

yond this, the regulation cannot even meet the definition of "emergency" proposed by defendant, since the regulation contains no reason why it *"must* be issued without delay."

It may well be that the 105 day [5] notification and publication requirement imposed by § 1490n will hamstring the FmHA in its efforts to dispose of costly surplus property in an expeditious manner. But this Court is powerless to rewrite the laws of Congress to achieve a more welcome result. Accordingly, summary judgment must be entered for plaintiffs on Count I of the amended complaint.

Based on the foregoing, it is

ORDERED:

1. The motion to intervene (D 30) is granted, and the Clerk is directed to file the proposed amended complaint substituting the intervenors as named plaintiffs.

2. The complaint of the original named plaintiff, Primitivo Arteaga, is hereby dismissed.

3. Defendant's motion for summary judgment (D 31) is hereby granted as to count III of the amended complaint and denied in all other respects.

4. Plaintiffs' motion for partial summary judgment (D 17) is granted as to count I of the amended complaint, and the Secretary is hereby enjoined from again promulgating a final rule authorizing the sale of "unsuitable" FmHA single family home property without first publishing the proposed rule for notice and comment, or certifying the rule as exempt, as required by 42 U.S.C. § 1490n.

---

[5] The 105 day total under § 1490n is the sum of the 60 days for comment and 30 days in final form required by subsection (a), and the 15 days the rule or regulation must be sent to Congress under subsection (b).