Tommy SHAW, Plaintiff,

v.

LIBRARY OF CONGRESS et al., Defendants.

Civ. A. No. 79-0325.

United States District Court, District of Columbia.

Sept. 14, 1979.

Sara Ann Determan, David C. Kohler, Hogan & Hartson, Washington, D. C., for plaintiff.

Robert M. Werdig, Jr., Asst. U. S. Atty., Washington, D. C., for defendants.

MEMORANDUM

OBERDORFER, District Judge.

I

Plaintiff is a black employee of the Library of Congress ("The Library"). In 1976

and 1977 he formally complained to Library officials that the Library had failed to promote him from GS-13 to GS-14 because, among other reasons, it had failed to validate and correct its allegedly discriminatory job selection criteria and procedures. On August 16, 1978, Library officials executed a settlement agreement with plaintiff which recited that the Library was "uncertain whether its failure to use validated procedures in its selection process involved in those positions for which the [plaintiff] applied constitutes an unjustified, unwarranted or discriminatory personnel practice for which restitution is provided by law."[1] Plaintiff's Exhibit 1, filed February 1, 1979, at 1. In settlement the Library agreed "to continue its good faith effort to validate its employee selection procedures to the extent required by law as expeditiously as possible within its available resources and personnel," and to assign plaintiff to a "new position with the primary responsibility of implementing the Library's validation program." *Id.* at ¶¶ I.A., B. The Library further agreed to assign at least two competent professional staff members to assist plaintiff in his new work. In specific consideration for plaintiff's withdrawal of his administrative complaint and for undertaking his new responsibilities, the Library agreed to promote plaintiff to GS-14 and to make the promotion retroactive to January 18, 1977 with back pay and with grade increases

provided the Comptroller General determines that the Library may grant such retroactive promotion and backpay under the facts of this case.

*Id.* at ¶ II.C. The question to be put to the Comptroller General was whether, in settling a discrimination complaint such as plaintiff had made, the Library has legal authority to make a retroactive promotion with back pay without first making a formal determination that there was in fact discrimination.[2] The agreement did not articulate the various sources of statutory authority about which the Library sought the Comptroller's advice.

When on August 16, 1978 the Library inquired of the Comptroller General, however, it effectively limited the inquiry to advice as to the Library's authority under the Back Pay Act, 5 U.S.C. § 5596 (1976). The August 16 letter conspicuously failed to ask the Comptroller General's advice about the Library's authority under Title VII to award back pay and promote retroactively in the absence of a finding of discrimination, and the Comptroller treated the inquiry as so limited.[3] Thus, on November 2, 1978, the General Counsel of the General Accounting Office responded to the Associate Librarian of Congress, stating the opinion that:

The Back Pay Act requires a finding by an appropriate authority that an unjustified or unwarranted personnel action has

1. An August 16 letter from the Library to the Comptroller General written pursuant to the settlement agreement stated that:

For several years, the Library has been committed to the validation of all its position qualifications and the process used to fill vacancies. Some have been completed, but a majority of position qualifications and selection processes remain to be validated.

Government Exhibit G, filed July 16, 1979, at 1.

2. The agreement stated specifically:

the Library agrees . . . to refer to the Comptroller General the question whether the Library may, in resolving Employee's complaints, provide that Employee's promotion to GS-14 be made retroactive to January 18, 1977, with appropriate backpay, without a specific finding by the Library of racial discrimination or an unwarranted or unjustified personnel action . . . .

Plaintiff's Exhibit 1, filed February 1, 1979, at 4; Statement of Material Facts As To Which Defendants Contend There Is No Genuine Issue, filed July 16, 1979, at ¶ 11.

3. The August 16 letter stated:

The Library is not certain . . . of the Comptroller General's position on one perspective [sic] of this settlement which the employee feels may provide the basis for a retroactive promotion and back pay under the provisions of the Back Pay Act of 1966 (5 U.S.C. § 5596) rather than the provisions of 42 U.S.C. 2000e-5(g) and regulations thereunder. This is the question of whether the Library's failure to validate the positions in question constituted an unjustified and unwarranted personnel action or such administrative error as to evoke application of the Back Pay Act.

Government Exhibit G, filed July 16, 1979, at 2.

occurred and that "but for" that action, the employee would have been promoted. Plaintiff's Exhibit 2, filed February 1, 1979. The General Counsel's November 2 letter declined to advise about the Library's authority under Title VII, noting that since 42 U.S.C. § 2000e–16(b) (1976) gives

> the Librarian of Congress separate authority to enforce Title VII of the Civil Rights Act with respect to employees of the Library, we do not express our opinion as to whether such a remedy would be authorized in this case under Title VII.

*Id.*

Thereafter when plaintiff attempted through counsel to discuss the Library's authority under Title VII referred to in the General Counsel's letter, he was finally rebuffed by a January 4, 1979 letter from the Associate Librarian of Congress. This suit followed.

## II

■ The matter is now before the Court on cross-motions for summary judgment. Those motions and the supporting memoranda frame the narrow questions left unanswered by the GAO General Counsel: whether the Library, in settling employment discrimination complaints, is authorized by Title VII to award retroactive promotion with back pay without formally finding itself guilty of discrimination; and, if so, whether it may, consistently with the statute, adopt regulations that preclude it from exercising that authority, that is, that preclude it even from considering an award of back pay in the settlement negotiation process.

The cross-motions are ripe for decision. The Library does not seriously advance the

August 16, 1978 settlement agreement as a bar to the action.[4] Suffice it to say therefore that the correspondence between the Library, the GAO General Counsel and the plaintiff's counsel reveal mistaken legal and factual assumptions underlying the settlement agreement which neutralize its possible effect as a bar.[5] The Library was operating as if its authority were circumscribed by the Back Pay Act and by the Library's regulations issued pursuant to Title VII. Since, as will be developed, that assumption is erroneous, the agreement based on it is without force and effect as a bar to plaintiff's invocation of whatever power the Library has under Title VII to award retroactive promotion and back pay.

Furthermore, the settlement agreement does not eliminate the case or controversy here because the Library did not perform the agreement. The settlement agreement contemplated a GAO ruling on the Library's authority to award back pay and promote retroactively, regardless of its statutory source. The plaintiff was obviously interested in the Library's authority, not some technical advice about the precise basis for it. The Library inquired of the Comptroller General about the Library's authority under the Back Pay Act, but not its authority under Title VII.[6] Thus, any waiver of legal rights that plaintiff agreed to in consideration of the Library's promises, *see* Plaintiff's Exhibit 1, at ¶ IIIC, was vitiated by the Library's failure to carry them out.

## III

■ For reasons to be stated, the Court concludes on the merits that Title VII creates in the Library legal authority to award retroactive promotion with back pay

---

4. In fact, defendant concedes that the Court has not been divested of jurisdiction by the settlement. *See, e. g.,* Response of Defendants to Post Hearing Memorandum of Points and Authorities In Support of Motion of Plaintiff For Summary Judgment And In Opposition To Motion of Defendants For Summary Judgment, filed September 7, 1979, at 1. The Court, however, proceeds to consider the issue *sua sponte.*

5. The Court may, of course, consider issues raised by the contract: it always has jurisdic-

tion to determine whether it has jurisdiction, even when the jurisdictional question is inextricably intertwined with questions on the merits. *See Nestor v. Hershey,* 138 U.S.App.D.C. 73, 80, 425 F.2d 504, 511 (D.C. Cir. 1969).

6. In fact, the Comptroller General's response permits the inference that the Comptroller General would, if asked, advise the Library that it enjoyed the authority which it sought to disavow.

to an employee who in good faith claims that he has suffered discrimination in employment, without formally deciding the merits of the discrimination charge.[7] As a corollary the employee has a right to require the Library to recognize and exercise this conciliation and settlement authority with which Congress endowed it in Title VII.[8]

In 1975, Congress made Title VII applicable to the Library, having made that Title applicable to the Executive Branch departments and independent agencies in 1972. The 1975 Act gave the Library all the responsibility and authority with respect to employment discrimination previously imposed and conferred upon other government agencies in 1972, responsibility and authority closely paralleling that exercised by private employers since 1964. The plain language of Title VII authorized retroactive award of back pay to correct discrimination. 42 U.S.C. § 2000e–16(b). Moreover, from the beginning of federal employment discrimination enforcement, conciliation has been a first principle, and flexibility of methods a key. This is evident from the legislative history. For example, the House Report accompanying the Civil Rights Act, in a passage quoted and relied upon by the Supreme Court in the recent case of *United Steelworkers v. Weber,* —— U.S. ——, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979) stated:

No bill can or should lay claim to eliminating all of the causes and consequences of racial and other types of discrimination against minorities. There is reason to believe, however, that national leadership provided by the enactment of Federal legislation dealing with the most troublesome problems *will create an atmosphere conducive to voluntary or local resolution of other forms of discrimination.*

7. The Comptroller General's opinion is not to the contrary.

8. The Court emphasizes that the plaintiff is not here seeking to require the Library to exercise its discretion to award back pay in a particular way in this case; rather, plaintiff seeks here to require the Library merely to *consider* an award of back pay as an option available to it in the settlement negotiation process. *See East*

H.R.Rep.No.914, 88th Cong., 1st Sess. (1963), at 18, *quoted in United Steelworkers v. Weber, supra,* 99 S.Ct. at 2728 (emphasis supplied by the *Weber* Court).

The public policy favoring amicable settlement of all disputes to reduce tension between the parties and to reduce the workload of courts operates with maximum force and effect in the context of employment discrimination. *See, e. g., United States v. Allegheny-Ludlum Industries, Inc.,* 517 F.2d 826, 849–50 (5th Cir., 1975). The Library is before the Court in this case as an employer rather than as an administrative agency or a mini-EEOC. If the Library had been a private employer, it could not seriously have claimed to lack power to award back pay and retroactive promotion to an employee threatening to sue on account of employment discrimination unless and until the employer had found that it had discriminated. *See, e. g., United Steelworkers v. Weber, supra.* Similarly, if a dispute, such as the one underlying this case, had come to court and been settled without any admission or adjudication of discrimination, there could be no doubt about a court's power to enforce the settlement. *See, e. g., United States v. Allegheny-Ludlum Industries, supra.* The Library concedes its authority to award such relief if it should make a formal determination of discrimination. The authorities are legion that Congress and the courts intended employers, private and public (including the Library), to have and to exercise broad authority to remedy employment discrimination. *See, e. g., United Steelworkers v. Weber, supra; Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 44, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); 42 U.S.C. § 2000e–16(b); S.Rep.No.415, 92nd Cong., 1st Sess. 15 (1971). Devices to achieve

*Oakland-Fruitvale Planning Counsel v. Rumsfeld,* 471 F.2d 524, 529, 534 (9th Cir. 1972) (requiring the Office of Economic Opportunity to consider whether to override the state executive's veto of a particular project's funding, even though the ultimate OEO decision would be beyond review); *cf. Committee for Full Employment v. Blumenthal,* 196 U.S.App.D.C. 155, 606 F.2d 1062 (D.C. Cir. 1979).

these objectives are freely available in court, at the administrative level and as management techniques of employers.

The Library can no more unilaterally incapacitate its Congressionally-created power to settle employment discrimination disputes by awarding retroactive promotions with back pay than it could refuse to use funds appropriated by Congress for a stated purpose. *See Local 2677 v. Phillips,* 358 F.Supp. 60, 75–79 (D.D.C.1973) (claim of discretion under Constitution rejected); *cf. Train v. City of New York,* 420 U.S. 35, 95 S.Ct. 839, 43 L.Ed.2d 1 (1975) (claim of discretion under statute rejected). Since the purported infirmity in the Library's authority is self-inflicted—by unilateral regulation—the Library could unilaterally restore it by simply adopting a regulation declaring its power restored. This formality is unnecessary here. The plaintiff has pressed a bona fide claim of employment discrimination. The Library has the power (but not the duty) under Title VII to dispose of that claim by promoting plaintiff retroactively and with back pay without any formal determination that it discriminated against him.

### IV

■ The Library's reliance on the particular regulations at issue here as a defense is particularly misplaced. The regulation invoked by the Library states:

> Where it has been determined that an employee of the Library was discriminated against, and as a result of that discrimination was denied a benefit, the Library shall take remedial actions . .

L.C.R. 2010–3.1 § 13.A.[9]

It is obvious that this regulation does not, by its terms, purport to preclude any retroactive promotion or back pay award in the absence of a finding of discrimination.[10] In light of the historic policy favoring the amicable settlement of disputes and the particular settlement policy of Title VII, no regulation should be interpreted as intending to limit the bargaining options available to an agency confronted by a bona fide discrimination complaint unless the language of the regulation is specific and unambiguous. That is certainly not the case of the regulation here invoked by the Library. Moreover, even if the regulation provided what the Library claims for it, its validity would be extremely questionable, particularly in the absence of any evidence that its use had been ratified by Congress for the purposes here invoked. On both grounds, therefore, the regulation does not effectively incapacitate the Library from awarding the relief plaintiff claims.

### ORDER AND JUDGMENT

Upon consideration of the parties' motions for summary judgment, the memoranda of points and authorities submitted by the parties, the arguments of counsel for the parties, and the record herein, and for the reasons stated in the accompanying Memorandum, it is by this Court this 14th day of September, 1979, hereby

ORDERED: That plaintiff's motion for summary judgment is GRANTED; and it is

FURTHER ORDERED: That JUDGMENT is entered for PLAINTIFF; and it is

FURTHER ORDERED: That defendants' motion for summary judgment is DENIED; and it is

FURTHER ORDERED, ADJUDGED AND DECLARED: That defendants are authorized (but not required) to award a retroactive promotion with back pay without a formal finding of discrimination to an employee who has made a bona fide com-

---

9. The Court notes that the so-called "regulation" that the Library invokes is apparently not one codified in the Code of Federal Regulations. *Cf.* 36 C.F.R., Parts 701–703 (1978).

10. A second regulation, L.C.R. 2010–3.1 § 11.-C., is less than perfectly clear, but, if anything, seems to indicate that the Library's regulations do contemplate the possibility of remedial or other action in the absence of a formal finding of discrimination. Moreover, many of the Library's regulations stress the importance of informal complaint resolution. *See, e. g.,* L.C.R. 2010–3.1 § 3.E.

plaint of employment discrimination, and that any regulation purporting to deny that authority is to that extent invalid; and it is

FURTHER ORDERED: That plaintiff shall be awarded reasonable attorneys' fees and other litigation costs reasonably incurred pursuant to 42 U.S.C. § 2000e–5(k), the precise amount of such fees and costs to be determined after further proceedings and a decision by our Court of Appeals en banc in *Copeland v. Marshall.*