LIBRARY OF CONGRESS ET AL. *v.* SHAW

No. 85–54.   Argued February 24, 1986—Decided July 1, 1986

BLACKMUN, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, POWELL, REHNQUIST, and O'CONNOR, JJ., joined. BRENNAN, J., filed a dissenting opinion, in which MARSHALL and STEVENS, JJ., joined, *post,* p. 323.

*Charles A. Rothfeld* argued the cause for petitioners. With him on the briefs were *Solicitor General Fried, Assistant Attorney General Willard,* and *Deputy Solicitor General Geller.*

*Charles Stephen Ralston* argued the cause for respondent. With him on the brief was *Julius LeVonne Chambers.*

JUSTICE BLACKMUN delivered the opinion of the Court.

The no-interest rule is to the effect that interest cannot be recovered in a suit against the Government in the absence of an express waiver of sovereign immunity from an award of interest. In this case, attorney's fees as well as interest on those fees were awarded to a plaintiff who prevailed against petitioner Library of Congress in a suit brought under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U. S. C. § 2000e *et seq.* We therefore must decide whether Congress, in enacting Title VII, expressly waived the Government's immunity from interest.

I

Respondent Tommy Shaw is an employee of the Library of Congress. He is black. During 1976 and 1977, he filed three complaints with the Library's Equal Employment Office alleging job-related racial discrimination. Following an investigation, Library officials rejected his complaints. Thereafter, respondent's counsel pursued administrative relief and settlement negotiations, and eventually reached a settlement with the Library. The latter agreed to promote Shaw retroactively with backpay provided that the Comptroller General first determined that the Library had authority to do so in the absence of a specific finding of racial discrimination. The Comptroller General ruled that the Library, under the Back Pay Act, 5 U. S. C. §§ 5595, 5596, lacked that power; he did not address whether such relief was authorized under Title VII.

Respondent then filed suit in the United States District Court for the District of Columbia, contending that Title VII authorized the Library to accord the relief specified in the settlement agreement. On cross-motions for summary judgment, the court agreed with respondent that the Library had the power under Title VII to settle his claim by awarding him a retroactive promotion with backpay without a formal finding of discrimination. 479 F. Supp. 945 (1979). The Library therefore was authorized to promote Shaw with backpay, and to pay a reasonable attorney's fee and costs pursuant to § 706(k) of the Civil Rights Act, 42 U. S. C. § 2000e–5(k). 479 F. Supp., at 949–950.

In a separate opinion calculating the attorney's fee, the District Court began with a lodestar of $8,435,[1] based on 99 hours of work at $85 per hour. App. to Pet. for Cert. 57a, 62a–66a. The court then reduced the lodestar by 20 percent to reflect the quality of counsel's representation. *Id.*, at

---

[1] The lodestar component of an attorney's fee is the product of "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley* v. *Eckerhart*, 461 U. S. 424, 433 (1983).

66a–67a. Finally, and significantly for present purposes, the court increased the adjusted lodestar by 30 percent to compensate counsel for the delay in receiving payment for the legal services rendered. *Id.*, at 68a. The District Court, relying on *Copeland* v. *Marshall*, 205 U. S. App. D. C. 390, 403, 641 F. 2d 880, 893 (1980) (en banc), indicated that increasing an attorney's fee award for delay is appropriate because the hourly rates used for the lodestar represent the prevailing rate for clients who typically pay their legal bills promptly, whereas court-awarded fees are normally received long after the legal services are rendered. An increase for delay is designed to compensate the attorney for the money he could have earned had he been paid earlier and invested the funds. The District Court concluded that the period of delay ran from the time the case should have ended, which it viewed as the latter part of 1978, until just after judgment.

The Court of Appeals for the District of Columbia Circuit affirmed. 241 U. S. App. D. C. 355, 747 F. 2d 1469 (1984). The court determined that, even though the adjustment was termed compensation for delay rather than interest, the no-interest rule applied because the two adjustments were functionally equivalent. The court went on to examine whether the Government expressly had waived its immunity from interest in Title VII. Section 706(k) of Title VII, 42 U. S. C. § 2000e–5(k), provides in relevant part:

> "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the [EEOC] or the United States, a reasonable attorney's fee as part of the costs, and the [EEOC] and *the United States shall be liable for costs the same as a private person.*" (Emphasis added.)

The Court of Appeals noted that in a Title VII suit against a private employer, interest on attorney's fees may be recovered. 241 U. S. App. D. C., at 361, 747 F. 2d, at 1475. See, *e. g.*, *Chrapliwy* v. *Uniroyal, Inc.*, 670 F. 2d 760 (CA7 1982), cert. denied, 461 U. S. 956 (1983). Therefore, the

Court of Appeals reasoned, in making the United States liable "the same as a private person," Congress waived the United States' immunity from interest. In the alternative, the Court of Appeals held that even if the "same as a private person" provision was not an express waiver, the District Court's adjustment was proper; when a statute measures the liability of the United States by that of a private person, the "traditional rigor of the sovereign-immunity doctrine" is relaxed. 241 U. S. App. D. C., at 365, 747 F. 2d, at 1479.

Judge Ginsburg dissented. *Id.*, at 371, 747 F. 2d, at 1485. She found no express waiver of immunity from interest, and declined to join what she considered to be a judicial termination of the no-interest rule. She viewed the increase for delay in this case as an award of interest, based on the manner and timing of its computation. She indicated, however, that use of current rather than historical hourly rates in order to compensate for delay, or use of historical rates that were based on expected delay, see *Murray* v. *Weinberger*, 239 U. S. App. D. C. 264, 741 F. 2d 1423 (1984), would not run afoul of the no-interest rule.

We granted certiorari to address the question whether the Court of Appeals' decision conflicts with this Court's repeated holdings that interest may not be awarded against the Government in the absence of express statutory or contractual consent. 474 U. S. 815 (1985).

II

In the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award. This requirement of a separate waiver reflects the historical view that interest is an element of damages separate from damages on the substantive claim. C. McCormick, Law of Damages § 50, p. 205 (1935). Because interest was generally presumed not to be within the contemplation of the parties, common-law courts in England allowed interest by way of

damages only when founded upon agreement of the parties.[2] See *De Havilland* v. *Bowerbank*, 1 Camp. 50, 51, 170 Eng. Rep. 872, 873 (N. P. 1807); *Calton* v. *Bragg*, 15 East. 223, 226–227, 104 Eng. Rep. 828, 830 (K. B. 1812); H. McGregor, Mayne and McGregor On Damages 281 (1961). In turn, the agreement-basis of interest was adopted by American courts. See *Reid* v. *Rensselaer Glass Factory*, 3 Cow. 393 (N. Y. 1824) (reviewing treatment of interest in state courts); C. McCormick, Law of Damages § 51, p. 208 (1935). Gradually, in suits between private parties, the necessity of an agreement faded. See *id.*, at 210.

The agreement requirement assumed special force when applied to claims for interest against the United States. As sovereign, the United States, in the absence of its consent, is immune from suit. See *United States* v. *Sherwood*, 312 U. S. 584 (1941). This basic rule of sovereign immunity, in conjunction with the requirement of an agreement to pay interest, gave rise to the rule that interest cannot be recovered unless the award of interest was affirmatively and separately contemplated by Congress. See, *e. g.*, *United States ex rel. Angarica* v. *Bayard*, 127 U. S. 251, 260 (1888) ("The case, therefore, falls within the well-settled principle, that the United States are not liable to pay interest on claims against them, in the absence of express statutory provision to that effect"). The purpose of the rule is to permit the Government to "occupy an apparently favored position," *United*

---

[2] The institution of interest originated under Roman law as a penalty due from a debtor who delayed or defaulted in repayment of a loan. See Leadam, Interest and Usury, in 2 Palgrave's Dictionary of Political Economy 432 (H. Higgs ed. 1925). The measure of the penalty due for the default or delay was *id quod interest*—that which is between—the difference between the creditor's current position and what it would have been if the loan had been timely and fully repaid. See also W. Ashley, An Introduction to English Economic History and Theory 196 (1966); C. McCormick, Law of Damages § 51, pp. 207–208 (1935). Because interest was conceived of as a penalty, it was generally presumed not to be within the contemplation of the parties.

*States* v. *Verdier*, 164 U. S. 213, 219 (1896), by protecting it from claims for interest that would prevail against private parties. See 4 Op. Atty. Gen. 136, 137 (1842).

For well over a century, this Court, executive agencies, and Congress itself consistently have recognized that federal statutes cannot be read to permit interest to run on a recovery against the United States unless Congress affirmatively mandates that result. The no-interest rule is expressly described as early as 1819, in an opinion letter from Attorney General William Wirt to the Secretary of the Treasury.[3] Congress had enacted a private Act to reimburse a citizen for unspecified injuries. When the citizen sought interest, in addition to the damages authorized by Congress, Attorney General Wirt stated that there is "no reason . . . to depart from the usual practice of the Treasury Department" of denying interest, and directed the citizen to seek relief from Congress. 1 Op. Atty. Gen. 268.[4]

---

[3] Prior to the creation of the Court of Claims, a citizen's only means of obtaining recompense from the Government was by requesting individually tailored waivers of sovereign immunity, through private Acts of Congress. The administrative responsibility of hearing many of the claims was assigned to the Treasury Department. See W. Cowen, P. Nichols, & M. Bennett, The United States Court of Claims, Part II, p. 4 (1978). Accordingly, the earliest statements of the no-interest rule appear in opinion letters of Attorneys General in response to questions posed by the Comptroller of the Treasury concerning payment of interest where a private Act of Congress authorized the Treasury Department to pay damages, with no mention of interest on the damages. See generally Wiecek, The Origin of the United States Court of Claims, 20 Admin. L. Rev. 387 (1967).

[4] Subsequent Attorneys General consistently reiterated the no-interest rule. See, *e. g.*, 2 Op. Atty. Gen. 390, 392 (1830) ("[C]laims against the government . . . are not payable until demanded—and then without interest"); 3 Op. Atty. Gen. 635, 639 (1841) ("It is confidently believed, that in all the numerous acts of Congress for the liquidation and settlement of claims against the government, there is no instance in which interest has ever been allowed, except only where those acts have expressly directed or authorized its allowance"); 4 Op. Atty. Gen. 14, 15–16 (1842) ("I have no objection to admit, that as between individuals, the claim for interest in such a case would be an equitable and reasonable one. . . . But nothing is bet-

In creating the Court of Claims, Congress retained the Government's immunity from awards of interest, permitting it only where expressly agreed to under contract or statute. Court of Claims Act, § 7, 12 Stat. 766 (current version at 28 U. S. C. § 2516(a)). Although the Act, by its terms, addresses only those cases brought in the Court of Claims, this Court repeatedly has made clear that the Act merely codifies the traditional legal rule regarding the immunity of the United States from interest. See, *e. g., Tillson* v. *United States*, 100 U. S. 43, 47 (1879); *United States* v. *N. Y. Rayon Importing Co.*, 329 U. S. 654, 658 (1947); *United States* v. *Tillamooks*, 341 U. S. 48, 49 (1951). In cases not in the Court of Claims, this Court has reaffirmed the notion: "Apart from constitutional requirements, in the absence of specific provision by contract or statute, or 'express consent . . . by Congress,' interest does not run on a claim against the United States." *United States* v. *Louisiana*, 446 U. S. 253, 264–265 (1980), quoting *Smyth* v. *United States*, 302 U. S. 329, 353 (1937).[5] See *United States* v. *Sioux Nation of Indians*, 448 U. S. 371, 387, n. 17 (1980).

## III

Respondent acknowledges the longstanding no-interest rule, but argues that Congress, by § 706(k), waived the Gov-

ter established as a general rule than that the government is not to pay damages [in the form of interest] in such cases: a stern but necessary rule, adopted everywhere in the practice of government"); 4 Op. Atty. Gen. 286, 294 (1843) ("[U]nder the established usage of the Treasury Department, over and over again sanctioned by the opinions of the law officers of the government, the Secretary has no authority to allow [interest]").

[5] The "constitutional requirement" arises in a taking under the Fifth Amendment. To satisfy the constitutional mandate, "just compensation" includes a payment for interest. See, *e. g., Smyth* v. *United States*, 302 U. S., at 353–354; *Albrecht* v. *United States*, 329 U. S. 599, 605 (1947). The no-interest rule is similarly inapplicable where the Government has cast off the cloak of sovereignty and assumed the status of a private commercial enterprise. See, *e. g., Standard Oil Co.* v. *United States*, 267 U. S. 76, 79 (1925).

ernment's immunity from interest in making the United States liable "the same as a private person" for "costs," including "a reasonable attorney's fee."

In analyzing whether Congress has waived the immunity of the United States, we must construe waivers strictly in favor of the sovereign, see *McMahon* v. *United States*, 342 U. S. 25, 27 (1951), and not enlarge the waiver "'beyond what the language requires,'" *Ruckelshaus* v. *Sierra Club*, 463 U. S. 680, 685–686 (1983), quoting *Eastern Transportation Co.* v. *United States*, 272 U. S. 675, 686 (1927). The no-interest rule provides an added gloss of strictness upon these usual rules.

> "[T]here can be no consent by implication or by use of ambiguous language. Nor can an intent on the part of the framers of a statute or contract to permit the recovery of interest suffice where the intent is not translated into affirmative statutory or contractual terms. The consent necessary to waive the traditional immunity must be express, and it must be strictly construed." *United States* v. *N. Y. Rayon Importing Co.*, 329 U. S., at 659.

## A

When Congress has intended to waive the United States' immunity with respect to interest, it has done so expressly;[6]

---

[6] See, *e. g.*, 28 U. S. C. § 2411 (expressly authorizing prejudgment and postjudgment interest payable by the United States in tax-refund cases); 31 U. S. C. § 1304 (appropriating funds for interest on certain district court judgments); 26 U. S. C. § 7426(g) (providing for interest in cases of wrongful levy by Internal Revenue Service). In other statutes, Congress has reiterated the general rule that interest cannot be allowed against the United States absent express waiver. See, *e. g.*, 28 U. S. C. § 2516(a) (interest available in the Claims Court only under contract or by statute expressly providing for payment thereof). Title 28 U. S. C. § 2674 provides that the United States is not liable for prejudgment interest on claims under the Federal Tort Claims Act. This unusual statutory exclusion was necessitated by the Federal Tort Claims Act's specific reference to state

thus, waivers of sovereign immunity to suit must be read against the backdrop of the no-interest rule. Yet respondent contends that by equating the United States' liability to that of a private party, Congress waived the Government's immunity from interest. We do not agree. See *Boston Sand & Gravel Co.* v. *United States*, 278 U. S. 41 (1928).

Title VII's provision making the United States liable "the same as a private person" waives the Government's immunity from attorney's fees, but not interest. The statute, as well as its legislative history, contains no reference to interest. This congressional silence does not permit us to read the provision as the requisite waiver of the Government's immunity with respect to interest.

When Congress enacted Title VII in 1964, and provided in § 706(k), 42 U. S. C. § 2000e–5(k), that the Government should be liable for attorney's fees "the same as a private person," it rendered the United States subject to liability only as a *plaintiff* for the fees of certain prevailing defendants. See *Christiansburg Garment Co.* v. *EEOC*, 434 U. S. 412 (1978). At its inception, thus, the provision was at most a very limited waiver of sovereign immunity, establishing that the United States is liable for the fees of prevailing defendants in the same circumstances as are private plaintiffs. It was not until 1972 that Congress waived the Government's immunity under Title VII as a defendant, affording federal employees a right of action against the Government for its discriminatory acts as an employer. See § 717, 42 U. S. C. § 2000e–16(d). That § 706(k) already contained language equating the liability of the United States for attorney's fees to that of a private person does not represent the requisite affirmative congressional choice to waive the no-interest rule; see also n. 5, *supra*.

Other statutes placing the United States in the same position as a private party also have been read narrowly to pre-

---

law for the rules of decision, in order to make clear that the United States' immunity from interest does not turn on state law.

serve certain immunities that the United States has enjoyed historically. In *Laird* v. *Nelms*, 406 U. S. 797 (1972), for example, the Court held that, although the Federal Tort Claims Act made the United States liable for the "negligent or wrongful act or omission of any employee of the Government . . . , if a private person, would be liable to the claimant," 28 U. S. C. § 1346(b), the United States nonetheless was not liable for the entire range of conduct classified as tortious under state law. Cf. *Lehman* v. *Nakshian*, 453 U. S. 156 (1981) (jury trials are available to private, but not to Government, employees under the Age Discrimination in Employment Act).

B

Nor do we find the requisite waiver of immunity from interest in the statutory requirement of awarding "reasonable" attorney's fees. There is no basis for reading the term "reasonable" as the embodiment of a specific congressional choice to include interest as a component of attorney's fees, particularly where the legislative history is silent. The Court consistently has refused to impute an intent to waive immunity from interest into the ambiguous use of a particular word or phrase in a statute. For example, interest has been ruled unavailable under statutes or contracts directing the United States to pay the "amount equitably due." See *Tillson* v. *United States*, 100 U. S., at 46. And the United States is not liable for interest under statutes and contracts requiring the payment of "just compensation," *United States* v. *Tillamooks*, 341 U. S., at 49; *United States* v. *Goltra*, 312 U. S. 203 (1941), even though it long has been understood that the United States is required to pay interest where the Constitution mandates payment under the Just Compensation Clause. See *Seaboard Air Line R. Co.* v. *United States*, 261 U. S. 299 (1923).

Respondent argues, however, that the policy reasons that motivated Congress to permit recovery of a *reasonable* attorney's fee require reading the statute as a waiver of immunity

from interest. But policy, no matter how compelling, is insufficient, standing alone, to waive this immunity:

"[T]he immunity of the United States from liability for interest is not to be waived by policy arguments of this nature. Courts lack the power to award interest against the United States on the basis of what they think is or is not sound policy." *United States* v. *N. Y. Rayon Importing Co.*, 329 U. S., at 663.

C

Finally, we note that the provision makes the United States liable for "costs," and includes as an element of "costs" a reasonable attorney's fee. Prejudgment interest, however, is considered as damages, not a component of "costs." See 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2664, pp. 159–160 (2d ed. 1983); 2 A. Sedgwick & G. Van Nest, Sedgwick on Damages 157–158 (7th ed. 1880). Indeed, the term "costs" has never been understood to include any interest component. See 28 U. S. C. § 1920; see also Wright, Miller, & Kane, *supra,* §§ 2666 and 2670. A statute allowing costs, and within that category, attorney's fees, does not provide the clear affirmative intent of Congress to waive the sovereign's immunity.

IV

In the alternative, respondent argues that the no-interest rule does not prohibit the award of compensation for delay. But the force of the no-interest rule cannot be avoided simply by devising a new name for an old institution:

"[T]he character or nature of 'interest' cannot be changed by calling it 'damages,' 'loss,' 'earned increment,' 'just compensation,' 'discount,' 'offset,' or 'penalty,' or any other term, because it is still interest and the no-interest rule applies to it." *United States* v. *Mescalero Apache Tribe*, 207 Ct. Cl. 369, 389, 518 F. 2d 1309, 1322 (1975), cert. denied, 425 U. S. 911 (1976).

Respondent claims, however, that interest and delay represent more than mere semantic variations. Interest and a delay factor, according to respondent, have distinct purposes: the former compensates for loss in the use of money, while the latter compensates for loss in the value of money. See Tr. of Oral Arg. 30.

We are not persuaded. Interest and a delay factor share an identical function. They are designed to compensate for the belated receipt of money. The no-interest rule has been applied to prevent parties from holding the United States liable on claims grounded on the belated receipt of funds, even when characterized as compensation for delay. See *United States* v. *Sherman*, 98 U. S. 565, 568 (1879). Thus, whether the loss to be compensated by an increase in a fee award stems from an opportunity cost or from the effects of inflation, the increase is prohibited by the no-interest rule.[7] See *Saunders* v. *Clayton*, 629 F. 2d 596, 598 (CA9 1980) ("In essence, the inflation factor adjustment is a disguised interest award"), cert. denied, 450 U. S. 980 (1981); *Blake* v. *Califano*, 200 U. S. App. D. C. 27, 31, and n. 9, 626 F. 2d 891, 895, and n. 9 (1980) (as a matter of economic theory, there may be a distinction between interest and a delay factor, but both are nonetheless prohibited by the no-interest rule); D. Dobbs, Remedies § 3.5, p. 174 (1973) (prejudgment interest represents delay damages).

That interest and compensation for delay are functionally equivalent also is supported by Title VII decisions concerning private employers. Private-sector decisions, when they adjust for the time of payment, grant interest or a delay factor, but not both. See, *e. g.*, *Brown* v. *Gillette Co.*, 536 F. Supp.

---

[7] When interest is awarded, as it was in this case, it is computed by multiplying a particular rate of interest by the amount of the award. An interest rate reflects not only the real opportunity cost of capital, but also the inflation rate. See R. Posner, Economic Analysis of Law 180 (3d ed. 1986). Thus, loss of value due to delay is an element of an interest adjustment.

113 (Mass. 1982); *Black Gold, Ltd.* v. *Rockwool Industries, Inc.*, 529 F. Supp. 272 (Colo. 1981); *Kennelly* v. *Lemoi*, 529 F. Supp. 140 (RI 1981).

## V

In making the Government liable as a defendant under Title VII, Congress effected a waiver of the Government's immunity from suit, and from costs including reasonable attorney's fees. Congress did not waive the Government's traditional immunity from interest. Accordingly, the judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE BRENNAN, with whom JUSTICE MARSHALL and JUSTICE STEVENS join, dissenting.

The Court today applies the rules for construing waivers of sovereign immunity in a wooden and archaic fashion to conclude that the United States has not waived its immunity to interest on attorney's fee awards. Because the result reached by the Court frustrates the clear intention of Congress, I respectfully dissent.

The so-called "no-interest rule" is, as the Court suggests, one of considerable antiquity.[1] *Ante*, at 316–317. It is a corollary of the ancient principle that the sovereign is immune from suit and from liability for damages in the absence of an express waiver of immunity. And, as a corollary of the general sovereign immunity doctrine, the no-interest rule logically should be governed by the same canons of construction we employ to interpret waivers of sovereign immunity for suits for damages. Just two Terms ago, we explained

---

[1] While the "no-interest rule" is an old one, we have not always treated it as an absolute prohibition against the award of interest against the United States in the absence of an express waiver of the rule. In both *Standard Oil Co.* v. *United States,* 267 U. S. 76 (1925) (Holmes, J.), and *United States* v. *The Thekla,* 266 U. S. 328 (1924) (Holmes, J.), the Court authorized just such awards with little explanation or analysis.

that "waiver of sovereign immunity is accomplished not by 'a ritualistic formula'; rather, intent to waive immunity and the scope of such a waiver can only be ascertained by reference to underlying congressional policy." *Franchise Tax Board of California* v. *United States Postal Service*, 467 U. S. 512, 521 (1984) (internal citation omitted). Applying this standard here, I would hold that Congress has waived immunity from prejudgment interest on attorney's fees in all situations where a private individual would be liable for such interest.

I begin with the relevant language of § 706(k) of Title VII, 42 U. S. C. § 2000e–5(k): "[T]he court, in its discretion, may allow the prevailing party, other than the [EEOC] or the United States, a reasonable attorney's fee as a part of the costs, and the [EEOC] and the United States shall be liable for costs the same as a private person." By this language, Congress indisputably authorized the award of reasonable attorney's fees to prevailing parties against any losing party, including the United States. Since, in appropriate circumstances, § 706(k) permits the award of prejudgment interest (or a delay adjustment) on attorney's fees awarded against losing parties other than the Federal Government,[2]

---

[2] See, *e. g.*, *Johnson* v. *University College of University of Alabama*, 706 F. 2d 1205 (CA11) (holding that in calculating attorney's fees, district courts should take into account inflation and interest), cert. denied, 464 U. S. 994 (1983); *Louisville Black Police Officers Org., Inc.* v. *Louisville*, 700 F. 2d 268 (CA6 1983) (declining to award a delay adjustment because the attorneys had been adequately compensated, but recognizing the availability of delay adjustments in appropriate cases); *Chrapliwy* v. *Uniroyal, Inc.*, 670 F. 2d 760 (CA7 1982) (upholding the employment of a delay adjustment), cert. denied, 461 U. S. 956 (1983); *Laffey* v. *Northwest Airlines, Inc.*, 572 F. Supp. 354 (DC 1983) (awarding delay adjustment), aff'd in part and remanded in part on other grounds, 241 U. S. App. D. C. 11, 746 F. 2d 4 (1984), cert. denied, 472 U. S. 1021 (1985); *Brown* v. *Gillette Co.*, 536 F. Supp. 113 (Mass. 1982) (awarding delay adjustment); *Lockheed Minority Solidarity Coalition* v. *Lockheed Missiles & Space Co.*, 406 F. Supp. 828 (ND Cal. 1976) (awarding delay adjustment). Cf. *Gates* v. *Collier*, 616 F. 2d 1268, 1278–1279 (CA5 1980); *Johnson* v. *Summer*, 488 F. Supp. 83, 85–88 (ND Miss. 1980) (both supporting the award of prejudgment interest

§ 706(k) *by its terms* authorizes the award of prejudgment interest against the Federal Government under like circumstances and thus constitutes an express waiver of sovereign immunity.

The "underlying congressional policy," *Franchise Tax Board, supra,* at 521, also supports this conclusion. The Senate Report relevant to the Equal Employment Act of 1972—the legislation that amended Title VII, *inter alia,* to protect federal employees against employment discrimination—indicates that Congress intended that federal employees enjoy the same access to courts and the same judicial remedies that are available to other Title VII plaintiffs. S. Rep. No. 92–415 (1971). The Report states:

> "[T]he committee found that an aggrieved Federal employee does not have access to the courts. In many cases, the employee must overcome a U. S. Government defense of sovereign immunity or failure to exhaust administrative remedies . . . . Moreover, the remedial authority of the . . . courts has also been in doubt. The provisions adopted by the committee will enable the Commission to grant full relief to aggrieved employees, or applicants . . . . *Aggrieved employees or applicants will also have the full rights available in the courts as are granted to individuals in the private sector under title VII.*" *Id.,* at 16 (emphasis added).

See also *Chandler* v. *Roudebush,* 425 U. S. 840, 841 (1976).

The legislative history of the 1972 amendments thus demonstrates that Congress intended that federal employees enjoy the same rights and remedies in the courts as. private litigants. It therefore follows that Congress intended that in situations where private sector Title VII litigants may re-

---

on attorney's fees awarded under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U. S. C. § 1988).

cover prejudgment interest on their attorney's fees awards, so may federal employees.[3]

It is true, as the Court points out, that the legislative history of the 1972 amendments to Title VII seems devoid of explicit reference to the availability of prejudgment interest on attorney's fees awarded against the Federal Government. But, only under a highly formalistic, "ritualistic," *Franchise Tax Board, supra,* at 521, canon of construction that ignores unmistakable congressional intent and that requires Congress to adhere to a talismanic formula in order to waive immunity can the absence of the words "interest on attorney's fees" from the congressional Committee Reports limit the waiver of sovereign immunity to the attorney's fees themselves and bar the award of interest on those fees. Such an antiquated canon of construction is unacceptable, both because it is unnecessary to protect the Government from liability to which it has not consented and because it frustrates the intention of Congress that federal employees enjoy the same rights and remedies in the courts as do individuals in the private sector.

---

[3] The Court contends that the fact that § 706(k) contains language equating the liability of the United States for attorney's fees to that of a private person "does not represent the requisite affirmative congressional choice to waive the no-interest rule," *ante,* at 319, because § 706(k) was drafted in 1964 and was intended at that time to waive sovereign immunity for attorney's fees and costs against the Federal Government only where the Federal Government had been the plaintiff in a Title VII case. The Court also observes that other statutes placing the United States in the same position as a private party have been narrowly construed to preserve the historic immunities that the Federal Government has enjoyed. The Court ignores, however, the relevance of the legislative history of the 1972 amendments to Title VII. As the legislative history makes clear, these amendments, by waiving the United States' sovereign immunity as a defendant, changed the scope of § 706(k)'s waiver of immunity in order to provide federal employees with the same rights and remedies in court proceedings as litigants in the private sector enjoyed under Title VII. It is this broad waiver of immunity that distinguishes § 706(k) from the other statutes cited by the Court.

In my view, the Court of Appeals correctly held that Congress, in stating that the Federal Government is liable for attorney's fees to the same extent as other losing parties, waived sovereign immunity for both fees and prejudgment interest thereon.[4] I therefore dissent and would affirm the judgment below.

---

[4] In dismissing respondent's argument that Congress, by equating the United States' liability to that of a private party, waived the Government's immunity from prejudgment interest on attorney's fees awards, the Court cites *Boston Sand & Gravel Co.* v. *United States*, 278 U. S. 41 (1928), without elaboration or explanation. *Ante*, at 319. *Boston Sand* concerned a "private Act" of Congress that empowered the District Court to hear a case arising from a collision between a United States warship and a private craft, and to award " 'the amount of legal damages sustained by reason of said collision . . . against the United States, upon the same principle and measure of liability . . . as in like cases in admiralty between private parties.' " 278 U. S., at 46. There, the Court rejected the argument that Congress had placed the Federal Government in all respects on the same footing as a private person, noting that many similar private Acts had been understood to preclude the award of interest and suggesting that Congress might have passed the Act in question with that fact in mind.

In sharp contrast to *Boston Sand*, we know here from the legislative history of the 1972 amendments to Title VII that Congress intended that federal employees enjoy precisely the same rights and remedies in federal court as do litigants from the private sector. See *supra*, at 325. Consequently, *Boston Sand* is inapposite to the instant case.