**ROCHESTER PURE WATERS DISTRICT, et al., Plaintiffs,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., Defendants.**

**Civ. A. No. 91–1540–LFO.**

United States District Court, District of Columbia.

March 22, 1994.

Joseph M. Zorc, Joseph M. Zorc & Associates, Washington, DC (Judith L. Chase, New York City, of counsel), for plaintiffs.

Carl Strass, Asst. Atty. Gen., Environment & Natural Resources Div., Dept. of Justice, Washington, DC, for defendants.

## MEMORANDUM

OBERDORFER, District Judge.

Plaintiffs, Monroe County, N.Y., the City of Rochester, N.Y., and the city's water district (collectively "Rochester"), brought this action to compel defendant, the Environmental Protection Agency ("EPA"), to fund certain expenses that arose out of litigation relating to Rochester's construction work on a sewage treatment plant in the early 1970s. Currently pending are EPA's motion to dismiss or for summary judgment and Rochester's motion for partial summary judgment. For the reasons stated in this Memorandum, the accompanying Order dismisses all of Rochester's claims.

### I.

EPA originally funded a portion of Rochester's costs for the expansion and upgrade of the VanLare sewage treatment plant in 1968. In 1972 Congress enacted Clean Water Act § 206(a), 33 U.S.C. § 1286(a) (the "206(a) program"), which allowed grantees that had instituted approved projects between 1966 and 1973 to apply for "upward adjustments" so that the grants would cover up to 55% of eligible costs. Congress subsequently set January 31, 1974 as the deadline to apply for 206(a) funds. The statute provided that "[a]ny application [timely] filed ... may be revised from time to time, as may be necessary." *Id.* Congress authorized $2.6 billion for the 206(a) program and appropriated $2.4 billion, all by 1977.

Rochester filed a timely 206(a) application and ultimately received a total of $43,472,000 in grants, covering 55% of its costs. In the mid–1980s, Rochester applied for an additional $3,986,884 to cover costs of settling lawsuits with the project's prime contractor and subcontractor. The New York State Department of Environmental Conservation (the "state agency"), EPA's delegated agent for the 206(a) program, denied the request in December 1984, holding that an applicant could not receive more than the amount claimed prior to the statutory deadline of December 31, 1974. Rochester pursued administrative remedies with the state agency and EPA. Rochester also filed a deviation request with EPA in September 1989 to seek a departure from EPA's regulations, pursuant to 40 C.F.R. Pt. 30. Meanwhile, in the Appropriation Act of November 9, 1989, Congress rescinded the remaining amount of the 206(a) appropriation, $47.7 million, that had not been disbursed. Rochester attempted to compel EPA to set aside $4 million to fund Rochester's outstanding disputed claims, but the Court of Appeals for this Circuit rebuffed that attempt. *Rochester Pure Waters District v. EPA,* 960 F.2d 180 (D.C.Cir.1992), *rev'g* 724 F.Supp. 1038 (1989) ("*Rochester I*").

This action involves Rochester's claims for reimbursement for several components of settlements in lawsuits with two contractors, Monsanto Enviro–Chem Systems, Inc. and Vanderlinde Electrical Company. The Complaint requests a writ of mandamus, a writ of prohibition, declaratory judgment, *de novo* or APA judicial review, and reversal of various EPA determinations against Rochester. In part, it requests judicial intervention to compel EPA to compel the state agency to pay a 30% "state matching share" of Rochester's grant, which Rochester alleges the state agreed to pay in exchange for an increase in the federal percentage of funding for water pollution abatement facilities. Rochester claims it seeks only equitable relief, not a money judgment. EPA has moved to dismiss or for summary judgment, and Rochester has moved for partial summary judgment as to its claim for funding of prejudgment interest from the *Monsanto* settlement.

## II.

Rochester raises six substantive claims in this action, all for components of settlements it paid to Monsanto and Vanderlinde or expenses arising from its litigation with those two contractors. First, it seeks funding for extra work damages that it paid as part of the settlement in the *Monsanto* litigation. Second, it seeks grant funding for delay damages it paid in the *Monsanto* settlement. Third, it seeks its legal defense expenses from the *Monsanto* litigation. Fourth, it seeks statutory prejudgment interest that it paid as part of the *Monsanto* settlement. Fifth, it seeks to compel EPA to make the state of New York process its claims relating to delay damages from the settlement in the *Vanderlinde* case more quickly. Sixth, it seeks its legal defense expenses from the *Vanderlinde* litigation.

■ *1. The claim for the extra work component of the Monsanto settlement.* EPA has granted a deviation for this claim, and the parties agree that EPA has paid Rochester the federal portion of the grant. EPA claims the issue is moot because it has paid Rochester, but Rochester contends that the state portion of the grant remains properly at issue in this lawsuit. Rochester claims the state agency has not paid Rochester the state matching share of the grant because the state does not consider itself bound by EPA's deviation decisions, and Rochester asserts that federal preemption would bind the state if the Court determined that Rochester was entitled to the funds as a matter of law. Therefore, Rochester seeks a declaratory judgment against EPA that Rochester is entitled to the funds as a matter of law, rather than merely at EPA's sufferance, in order to make New York pay the state matching share. Rochester also seeks a writ of mandamus that would compel EPA to take action to make the state pay the matching share.

EPA has stated that it does not intend to take action against the state agency as requested by plaintiffs. A letter dated March 9, 1994 from William J. Muszynski, EPA Acting Regional Administrator, to plaintiffs' counsel stated:

EPA has determined, in the exercise of its discretion, that it will not further investi-gate the State of New York's possible obligation to pay to Rochester the state matching share of federal eligible project costs. EPA has decided, in further exercise of its discretion, that it will not prosecute the State of New York to compel the State to pay matching funds.

*Id.* at 2. The letter also stated EPA's understanding of the state agency's view that the state has no duty to pay the federal matching share, and it contended that plaintiffs had not produced evidence to EPA that established either the state's duty to pay or EPA's duty to take action against the state agency. The letter renders Rochester's claims regarding the state matching share ripe for decision.

■ New York is a separate sovereign, not party to this action, with legal interests distinct from those of EPA. Rochester has not produced evidence to establish that the declaratory judgment it seeks in order to compel action by the state can properly issue against EPA or that such a judgment would produce the result Rochester seeks. As for its request for a writ of mandamus, Rochester has presented no persuasive basis for interfering with EPA's discretion to deploy its resources as it sees fit, least of all in a situation such as this one, where Rochester has the option to sue New York directly. This is essentially a situation in which plaintiffs are not entitled to the relief they seek because their ability to sue the state affords them an adequate remedy at law. *See, e.g., O'Shea v. Littleton,* 414 U.S. 488, 499, 94 S.Ct. 669, 678, 38 L.Ed.2d 674 (1974). Because this claim is concededly moot as to the federal share of the grant and fails to state a claim as to the state share, it will be dismissed.

■ *2. The claim for delay damages paid in the Monsanto settlement.* This amount represents costs to the contractor of extra, unplanned work days that the *Monsanto* jury found to be Rochester's fault. EPA has denied grant funding and has refused a deviation. The question this claim presents is whether the agency acted arbitrarily and capriciously in treating the jury's finding of Rochester's fault as *res judicata* in denying

funding. The parties agree that this question is ripe for review, and Rochester has cross-moved for summary judgment.

■ EPA is entitled to significant deference in its interpretation of the Clean Water Act, including the 206(a) program. *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). That deference extends to EPA's determination about which costs are grant eligible under the program. Pursuant to the Administrative Procedure Act, the Court should overrule the agency's interpretation of the statute only where that interpretation is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." 5 U.S.C. § 706(2)(A). As to this claim, the agency determined that Rochester was not eligible for grant funding for delay expenses because Rochester caused the work delays that created those expenses. EPA's determination mirrored the verdict of the *Monsanto* jury. The agency's position—that the jury's determination that Rochester caused the delays precludes *de novo* relitigation of the causation issue before the agency—is not arbitrary and capricious. Because "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law," Fed.R.Civ.P. 56(c), EPA is entitled to summary judgment on this claim.

*3. The claim for legal defense expenses from the Monsanto litigation.* EPA granted a deviation for these costs on September 26, 1991. The Regional Administrator of EPA Region II issued a decision on February 4, 1994 that authorized funding of the full federal share of these expenses. In a letter dated February 14, 1994, Helen Ferrara, EPA's Assistant Regional Counsel, assured counsel for Rochester that EPA would "make payment of [the amount authorized in the February 4 decision" within thirty (30) days." Accordingly, the federal portion of this claim will be dismissed as moot.[1] Rochester also seeks a declaratory judgment to compel New York to pay its state matching share of these expenses. That portion of Rochester's legal defense expenses will be dismissed for failure to state a claim for the reasons stated above in the discussion of the *Monsanto* extra work damages.

■ *4. The claim for the prejudgment interest paid in the Monsanto settlement.* EPA has denied grant funding of this amount and has refused a deviation. Rochester has cross-moved for summary judgment. EPA argues, by way of analogy to the rule that only express Congressional authorization permits recovery of interest against the United States as a party, that a strong presumption exists against finding congressional intent to authorize reimbursement for interest. *Cf. Library of Congress v. Shaw*, 478 U.S. 310, 314–22, 106 S.Ct. 2957, 2961–65, 92 L.Ed.2d 250 (1986). In this particular context, EPA claims that OMB Circular A–87 prohibits reimbursements for prejudgment interest absent express statutory authorization. Applying this Circular to Clean Water Act grants, contends EPA, comports with the legislative history of the Act, because delay costs, such as interest, represent an inefficient use of the limited grant funds available. In addition, EPA interprets the implementing regulations' limitation of grant-eligible expenses to "construction costs" as categorically excluding prejudgment interest and other costs of delay. *See* 40 C.F.R. § 35.-805–1. Finally, EPA based its denial of the interest deviation in part on its allegation that Rochester failed to notify EPA sufficiently about the commencement and progress of the *Monsanto* litigation, including a failure to seek approval of the settlement terms.

The combined weight of EPA's arguments compels the conclusion that Rochester is not entitled to recover prejudgment interest. While the *Library of Congress* rule explicitly restricts interest recoveries only against the United States as a party, that decision justi-

---

**1.** Rochester has expressed concern throughout this litigation and *Rochester I* about the availability of funds to reimburse it for any of its claims on which it might either prevail or obtain a deviation. EPA has represented that, despite Congress' 1989 recision of the remaining appro-

priation for the 206(a) program, unused funds returned by other grantees would be available to pay Rochester. EPA's February 14 letter demonstrates that funds are available for Rochester's claims.

fies the restriction by the "basic rule of sovereign immunity, in conjunction with the requirement of an agreement to pay interest." 478 U.S. at 315, 106 S.Ct. at 2962. That rationale applies with equal force here. Moreover, EPA's interpretation of its own implementing regulations, and its assessment of the application of OMB circular A–87 to the Clean Water Act, are entitled to substantial deference under *Chevron, supra.* Rochester contends that the phrase "construction costs" in the regulations should be interpreted broadly to include such construction-related costs as the litigation expenses and settlement amounts at issue here. However, Rochester offers no basis for concluding that EPA's literal interpretation of the phrase is arbitrary and capricious. EPA's interpretations of its regulations and of the OMB circular's application to the 206(a) program are reasonable and well within its discretion. EPA is therefore entitled to summary judgment on the issue of prejudgment interest.

5. *The claim for delay damages paid in the Vanderlinde settlement.* Rochester concedes that EPA has not taken final agency action on Rochester's claim for *Vanderlinde* delay damages. The state agency has disallowed delay damages at its final level of review for the reason that EPA's rejection of the *Monsanto* delay damages also governs the *Vanderlinde* claim. Rochester is now in the process of appealing the state agency's determination to EPA. In the instant Complaint, Rochester requests an expedited administrative appeal or, in the alternative, immediate judicial review of the state agency's final order on the ground that further exhaustion of administrative remedies would be futile.

A letter dated February 23, 1994 from EPA Assistant Regional Counsel Helen Ferrara to plaintiff's counsel addressed this aspect of the complaint. Defendant instructed plaintiff to present EPA with any evidence "that the Vanderlinde [delay costs] are distinguishable from the Monsanto [delay costs]" within thirty days. The letter also stated, at p. 2, that "we intend to issue a Regional Administrator's decision in this matter no later than April 30, 1994." This representation by EPA eliminates any need

that might have existed for the Court to order the agency to conduct an expedited review. Rochester has not demonstrated that its recourse to EPA's review of the state agency's decision, now imminent, is so futile as to compel judicial bypass of the agency's procedures. The proper time for judicial review, if Rochester still desires it, will be after EPA has ruled. Accordingly, Rochester's claim for *Vanderlinde* delay damages will be dismissed without prejudice for lack of ripeness.

6. *The claim for legal defense expenses from the Vanderlinde litigation.* The February 4 decision of the Regional Administrator and the February 14 letter from EPA's Assistant Regional counsel to plaintiff's counsel apply to this claim as well as Rochester's claim for legal defense expenses from the *Monsanto* litigation. Accordingly, for the reasons stated above in the discussion of that claim, the federal portion of the claim for *Vanderlinde* legal defense expenses will be dismissed as moot, and the portion seeking action to compel EPA to take action against New York with respect to the state matching share will be dismissed for failure to state a claim.

### III.

Rochester raises several objections to EPA's current administrative review procedures, claiming, *inter alia,* that those procedures deny it due process and equal protection of the laws. In 1984, before Rochester sought EPA review of any of the claims at issue in this action, EPA altered its administrative review procedures, replacing the "subpart J" procedure, which involved an adversarial proceeding with cross-examination of witnesses, with the "subpart L" procedure, which involves only an informal hearing. Rochester argues that this change denies Rochester its right to cross-examine witnesses. The Supreme Court, however, has held that litigants in agency proceedings possess no right to cross-examine agency officials in administrative proceedings. *See United States v. Morgan,* 313 U.S. 409, 422, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941). An administrative claimant enjoys the right to place evidence in the record, and Rochester

does not contest that the subpart L procedure affords it somewhat more than that. *See Matthews v. Eldridge,* 424 U.S. 319, 343–44, 348, 96 S.Ct. 893, 907, 909, 47 L.Ed.2d 18 (1976). Moreover, to the extent Rochester challenges EPA's procedural adherence to its own regulations, EPA is entitled to *Chevron* deference, which Rochester's contentions fail to overcome. Rochester also claims that the contractual terms of its grant agreement entitle it to the subpart J procedure. But Rochester provided no consideration for the funding EPA has provided it. The federal government simply gave it grants. Therefore, Rochester can have no special contractual rights to particular procedures.

Rochester raises a number of other procedural claims. It objects to EPA's failure to produce a full administrative record of its decisions on Rochester's various substantive claims. EPA replies that no administrative record is necessary because Rochester's claims either have been won by Rochester, are proceeding through the administrative process, or involve legal determinations that do not require an administrative record. Rochester also contends that it will be injured if EPA closes its administrative file on Rochester's claims. EPA denies that Rochester has any cognizable legal interest in EPA's internal management of its files; EPA further represents that it has indicated no intention to close the files. Finally, Rochester seeks to compel EPA to report to Congress on its progress in pursuing Rochester's claims. EPA claims that nothing requires it to make such a report and that such a report at this time would not benefit Rochester. Rochester has made no showing that any of these procedural actions of EPA has denied Rochester any legal entitlement. Accordingly, EPA's motion for summary judgment will be granted as to all of the procedural claims in the Complaint.

### ORDER

For the reasons stated in the accompanying Memorandum, it is this 18th day of March, 1994, hereby

ORDERED: that Defendants' Motion to Dismiss should be, and is hereby, GRANTED in part; and it is further

ORDERED: that Defendants' Motion for Summary Judgment should be, and is hereby, GRANTED in part; and it is further

ORDERED: that Plaintiffs' Motion for Partial Summary Judgment should be, and is hereby, DENIED; and it is further

ORDERED: that plaintiffs' claim seeking a declaratory judgment regarding the State of New York's obligation to pay a state matching share of plaintiffs' grants is hereby DISMISSED pursuant to Fed.R.Civ.P. 12(b)(6); and it is further

ORDERED: that plaintiffs' claims seeking to compel defendants to attempt to compel the state of New York to pay state matching shares of plaintiffs' claims are hereby DISMISSED pursuant to Fed.R.Civ.P. 12(b)(6); and it is further

ORDERED: that plaintiffs' claims for delay damages and prejudgment interest from the *Monsanto* settlement, and their claims regarding defendants' review procedures, are hereby DISMISSED pursuant to Fed.R.Civ.P. 56(c); and it is further

ORDERED: that plaintiffs' claims regarding the federal shares of its legal defense expenses in the *Monsanto* and *Vanderlinde* litigation are hereby DISMISSED as moot; and it is further

ORDERED: that plaintiffs' claim for delay damages from the *Vanderlinde* settlement is hereby DISMISSED without prejudice for lack of ripeness.