MINORITY MEDIA OF PAHRUMP,
INC., Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 92–400L.

United States Court of Federal Claims.

Dec. 28, 1992.

Cyrus E. Phillips, IV, Washington, DC, for plaintiff. Kenneth D. Brody, of counsel.

Alan Brenner, Washington, DC, for defendant.

## OPINION

BRUGGINK, Judge.

The complaint in this action alleges that the United States, acting through the Forest Service, has deprived Minority Media of Pahrump, Inc. of its interest in a right-of-way grant on which it operates a communications site on public lands in the Toiyabe National Forest in Nevada. This deprivation is said to constitute a taking within the meaning of the Fifth Amendment to the United States Constitution. The Government has moved to dismiss the action without prejudice pursuant to Rule 12(b)(1), Rules of the Court of Federal Claims, on the ground that Minority Media has failed to exhaust its administrative remedies. For the reasons discussed below, the motion is granted.

The lack of clear distinctions between the concepts of failure to exhaust administrative remedies, lack of finality, and ripeness could all be discussed in the context of this case, as could the uncertainties about whether these defenses should be treated, particularly in the context of a constitutional takings claim, as implicating jurisdiction. Fortunately for the Government, that lack of precision does not preclude dismissal here. The facts alleged are so plainly short of presenting a taking claim that it is to the plaintiff's advantage to have the matter dismissed under Rule 12(b)(1).

## BACKGROUND [1]

Minority Media was granted a right-of-way by the Forest Service to operate a communications site on Mount Potosi on December 15, 1986. The site consists of a transmitter building, two transmitting towers, transmission lines and a common antenna serving three FM radio stations, as well as supporting transmitters and antenna belonging to other tenants and a TV translator for the nearby town of Pahrump, Nevada. The grant is effective for a ten year term, and is renewable. Minority Media operates a land mobile radio transmitter. The additional users of the site, FM radio broadcasters, mobile radio broadcasters, and the town, are all lessees under Minority Media.

On April 24, 1992, the transmitter building at the site was destroyed by fire. On April 29, 1992, a meeting was held between the FM radio broadcasting tenants and representatives of the Forest Service. Minority Media was not invited to attend. Minority Media alleges that it was informed on the following day by Forest Service personnel that the Service would deal directly with plaintiff's tenants, and that the radio broadcasters would be permitted to make use of Minority Media's transmission towers and equipment.

On April 30, Minority Media made a request to the District Ranger for a written decision either confirming or revoking the statements that had been made at the April 29 meeting. Plaintiff alleges that this request was made pursuant to 36 C.F.R. § 251.80(a) (1991).[2] The District Ranger wrote back on May 4, 1992. Minority Media refers to this document as a "decision" suspending its right-of-way grant. It further treats the receipt of this letter as the date of taking. The following paragraphs constitute the only portion of the letter that gives any specific instructions to plaintiff or reflects any specific action taken:

1. The facts are drawn from the complaint and documents attached to the motion to dismiss.

2. That paragraph merely describes the purpose of Subpart C, "Appeal of Decisions Relating to Occupancy and Use of National Forest System

The results of the fire ha[ve] created many unanswered questions which may have a significant impact on the future of this communication site. The Forest Service has the legal responsibility for the administration of the federal lands upon which the site is located. Prior to making any long term commitments or decisions associated with the fire, the Forest Service intends to delay any permanent construction of facilities until they have received complete results of the investigation.

It is our intent to allow Minority Media to install some sort of temporary structure such as a "Tuff Shed" or "Mobile" trailer to house their two-way radio equipment. It is also our intention to allow all other users to install similar temporary facilities to allow them the opportunity to continue providing temporary services.

The users may co-locate when it is in their best interest. When users co-locate, the users will be responsible to insure that their legal interests are adequately recognized. Any temporary co-location will not obligate the Forest Service to recognize this arrangement once the investigation is completed and decisions affecting the future of the site are finalized. No permanent facilities will be allowed until the final investigation report can be read and acted upon.

Mr. Paustian [of Minority Media] also stated that the "Forest Service intends to make use of Minority Media's transmitter tower at the communications site, and that Minority Media's right-of-way will be transferred to another site." Mr. Perkins [of the Forest Service] did suggest the possibility of Minority Media being relocated to the original two-way site. However, Mr. Paustian upon hearing that statement quickly made several assumptions about our intentions which were not accurate.

Lands." The procedures for invoking the appeals process appear in succeeding sections. It is noteworthy that an appeal only lies from a written decision, 36 C.F.R. § 251.81, hence plaintiff's request.

We want to clarify our position in relation to Minority Media's existing permit. On several occasions we have expressed our desire to eliminate the existing situation where both two-way radio use and FM use is co-located on the same site. Our national policy is to, where possible, separate low-power (two-way radio communications) from high-power (FM radio broadcast) transmissions. Since the Minority Media building is a total loss as a result of the fire, we want to determine if the Forest Service is legally bound to allow Minority Media to rebuild a facility to accommodate both low-power and high-power broadcast users.

A final decision on the site cannot be issued until our Office of General Coun[sel] (OGC) has reviewed the terms of the right-of-way grant and provided us with their legal opinion. The Forest Service will honor all valid existing rights to the extent that we are legally bound by law. Additionally it would be premature to allow any permanent structures to be rebuilt on the site until the current investigation is completed and the results are known.

We have encouraged our Office of General Coun[sel], ATF and Clark County to finalize their findings as soon as possible. When we have received an opinion from OGC we will inform Minority Media of that opinion. We hope the opinion can be quickly obtained. However, due to the nature of this request and the nature of the investigation, it may take several months before the situation can be completely resolved.

There is no allegation by Minority Media that the developments anticipated in the letter have occurred. The only other datum supporting a claim of a completed taking is a letter of May 26, 1993 in which the District Ranger permitted one of plaintiff's tenants to construct and operate a communications site on Mount Potosi in such a way that is independent of Minority Media's grant. This is alleged by plaintiff to be in violation of Special Stipulation Number 1 of Minority Media right-of-way grant, and in violation of 36 C.F.R. § 251.55(b)(3).

Minority Media concludes that these two events unlawfully deprived it of all value, both invested and expected, in its right-of-way grant and its lease contracts. Damages asserted include the book value of the facilities, $515,593.98, together with the net present value of the lease contracts for the balance of the right-of-way term, plus a renewal period of ten years.

Attached to defendant's motion to dismiss is a letter dated August 17, 1992 from the Region 4 Forest Supervisor informing Minority Media that its asserted multiple failures to comply with the terms of its grant and with applicable regulations were grounds to revoke the right-of-way. The letter recites that Minority Media had been sent a "Notice of Non–Compliance" on October 30, 1991 outlining the alleged infractions. Because of what the Forest Service perceived to be an insufficient response to the notice and continuing violations, the August 17 letter revoked the grant. Plaintiff was notified of its right to appeal within forty five days pursuant to the procedure set out in 36 C.F.R. Part 251. On October 1, 1992, Minority Media exercised its right to appeal, challenging the revocation before the Regional Forester. The appeal is directed at the decision of the Forest Supervisor to revoke the grant and addresses the grounds relied on for revocation. It closes with a request for an oral presentation, pursuant to 36 C.F.R. § 251.-97. Government counsel recites in its brief that no date has yet been set for the appeal hearing.

## DISCUSSION

The Government argues for non-prejudicial dismissal on the ground that the asserted taking is still the subject of an incomplete administrative process. It cites, among other decisions, *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), for the proposition that, until the administrative agency has reached a final, definitive position regarding how it will apply the regulations at issue to the property, the courts are not in a position to determine if there has been a

taking. *Id.* at 190–91, 105 S.Ct. at 3118.[3] Defendant applies this principle to the August 17 notice of revocation and subsequent appeal and concludes that the plaintiff has not heard the final word on whether its grant will be revoked.

Minority Media's response is by way of confession and avoidance. It concedes the pendency of its appeal of the August 17 revocation, but points out that the complaint in this proceeding is directed at actions surrounding the April 29 meeting and May 4 and May 29 letters. It argues that the "decision" of May 4, combined with the Forest Service's grant of permission to its former tenant, KJUL, to rebuild a transmission facility, are "separate and distinct from the Forest Supervisor's decision of August 17, 1992 revoking Minority Media's right-of-way grant for its supposed failure to completely inspect, verify, and correct all incidents of unauthorized occupancy ..." Fortunately, the function of courts is not so far divorced from reality.

■ The requirement of finality has special importance in takings cases. The machinery of the federal courts should not be invoked to determine if the Constitution mandates compensation until the government action at issue has reached its natural conclusion. The compensation remedy should be a last, not a first, resort. *See Agins v. City of Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980). If the alleged taking is merely threatened, as it is in this case, or if there is an alternative means available to the property owner to correct the government action short of forcing a de facto condemnation through the Tucker Act remedy, then the litigant should pursue it.

■ Everything about the present proceeding suggests unseemly haste in coming to this court. With respect to the May 4 letter, virtually no statement in it reflects any concrete decisions made with respect to Minority's interest. Although plaintiff's letter of April 30 is not included in the record, the bulk of the May 4 letter· is apparently a response to plaintiff's concerns about the circumstances of the meeting of April 29. Nothing in the letter supports the assertion that the Forest Service "has suspended Minority Media's right-of-way grant." Complaint ¶ 9. The only concrete action taken affecting plaintiff's ability to broadcast is that a permanent facility cannot, for the present, be built. Both Minority Media and its tenants can rebuild temporary facilities, however. As to plaintiff's concern about having to relocate, or not having its lease renewed on the same terms (i.e., without limitation on co-locating low and high-power transmitters), the letter is a model of caution and circumspection. That possibility is merely being considered. For aught that appears, nothing has been decided, pending the results of the fire investigation and the agency's analysis of its obligations to Minority Media.

The May 29 letter explaining that the station's grant is "not dependent on the grant to Minority Media" is an insufficient basis to warrant intervention by this court into what first must unfold as an administrative matter. The parties' positions with respect to their relative rights and duties have not yet been clearly articulated, much less have they come to joinder. When they do, the relevant regulations provide for appeal within the agency. That process in turn is subject to review in the district courts.[4]

3. The *Williamson* court distinguished between failure to exhaust administrative remedies and lack of finality. It was the latter deficiency that was at issue in that case. The court pointed out that the two concepts are related, but serve somewhat different functions. In the case at bar, as in *Williamson,* there has been no final agency action.

4. The court notes in addition that the preferred analytical tool for evaluating disputes about the types of rights granted here would not be eminent domain theory but contract analysis, albeit informed by the applicable regulations. *See Marathon Oil Co. v. United States,* 16 Cl.Ct. 332, 338–39 (1989). Moreover, it is not clear in what way Special Stipulation 1 or 36 C.F.R. § 251.55 could be implicated by the May 29th letter. That stipulation puts restrictions on Minority Media, not the Forest Service:

1. Holder shall neither install nor allow the installation of another user's electronic equipment in Holder's building or attachment to Holders's antenna support structures unless

Nor can Minority Media artificially block the court's consideration of the fact of the August 17 revocation and subsequent appeal. This revocation affects more than merely the quantum of potential recovery, as plaintiff suggests. To pursue a taking claim, Minority Media must establish ownership of a property interest. If the Service had the right to revoke the grant, then the subject of a taking claim is necessarily eliminated. The court declines to go through the charade of a liability determination as to events in May 1992 in the theoretical possibility of finding a temporary taking prior to August 17, when the

entire operation was shut down because of the fire.

In sum, the action is premature at best. The plaintiff is attempting to elevate to a constitutional level a dispute that is better addressed within the administrative sphere. The Clerk is directed to dismiss the complaint without prejudice. No costs.

---

the new user has a right-of-way grant from the Bureau of Land Management for the joint occupancy of the said facility.

Nor is it clear how § 251.55 creates any property interest in Minority Media. It preserves rights in the Government:

(b) All rights not expressly granted are retained by the United States, including but not limited to ... (3) the right to require common use of the land or to authorize the use by others in any way not inconsistent with a holder's existing rights and privileges after

consultation with all parties and agencies involved. When costs can be feasibly allocated and have not been amortized, a new holder may be required to compensate existing holders for an equitable portion of the original costs or other expenses associated with the common use.

If Minority Media is of the view that its rights to consultation were improperly not recognized, it should administratively, and if appropriate, by district court review, pursue that avenue.