**Bill Max OVERTON**

v.

**The UNITED STATES.**

**No. 92–864C.**

United States Court of Federal Claims.

Aug. 23, 1993.

Bill Max Overton, pro se.

John Warshawsky, Washington, DC, with whom was Acting Asst. Atty. Gen. Stuart E. Schiffer, for defendant. Leslie Randolph, Resolution Trust Corp., of counsel.

### OPINION

YOCK, Judge.

This dispute comes before this Court on the defendant's motion to dismiss. The plaintiff, Mr. Bill Max Overton, seeks recoupment from the Resolution Trust Corporation (RTC) of interest for three certificates of deposit which had been issued by two defaulted financial institutions. The plaintiff also seeks recoupment of an interest check which was issued prior to default but dishonored after the financial institution was placed in default. As for the claim for outstanding interest after default, the defendant moves for dismissal as no statutory or regulatory authority exists for the recoupment of interest from the Government for the period after the default of a financial institution. As for the claim for the dishonored interest check, the

defendant asserts the failure of the plaintiff to exhaust the administrative remedies. Resultingly, and for the reasons stated below, this Court grants the defendant's motion and the plaintiff's complaint will be dismissed.

### Facts

At issue here are three certificates of deposit purchased by the plaintiff from financial institutions that later were placed in default by the Government. On April 27, 1989, the plaintiff purchased certificate of deposit No. 1–1113395 (Certificate No. 1) from the Sun County Savings Bank of Los Cruces, New Mexico (Sun County), in the amount of $17,115.18. Certificate No. 1 maintained a simple interest rate of 9.2 percent, with interest distributions by monthly checks, and initially matured on October 27, 1989. After the first maturity date, the plaintiff renewed the certificate for two additional six month terms. On June 21, 1989, the plaintiff also purchased certificate of deposit No. 1–11103589 (Certificate No. 2) from Sun County in the amount of $15,066.58. Certificate No. 2 maintained a simple interest rate of nine percent, with interest paid at maturity, and initially matured on December 20, 1989. After the first maturity date, the plaintiff renewed the certificate for one additional six-month term. When Sun County failed to remit payment after the final maturity of both certificates, the plaintiff demanded payment from the bank. Because the plaintiff failed to produce the original certificates as proof of purchase, however, Sun County refused to make payment. Sun County thereafter was placed in default by the Office of Thrift Supervision (OTS). Subsequently, the plaintiff contacted Mr. Paul Fordice, a Government agent in charge of the operations at Sun County. For factually disputed reasons, the plaintiff remained unable to resolve the problems over the certificates with Mr. Fordice.

Following the closure of Sun County by the OTS on May 31, 1990, and the subsequent appointment of the RTC to resolve all claims against the financial institution, the plaintiff filed suit on January 7, 1991, in the United States District Court for the Eastern District of California against Sun County for principal and interest as well as against Mr. Fordice, in his role as a Government agent, for failure to redeem the disputed certificates in a timely manner. For jurisdictional reasons, the District Court dismissed the suit. *Overton v. United States*, Civ. No. S–90–1006 EJG–JFM (E.D.Cal. Apr. 1, 1991). On March 20, 1991, the plaintiff appealed the decision, but the United States Court of Appeals for the Ninth Circuit dismissed the appeal on December 11, 1991, for failure to comply with court orders. *Overton v. United States*, No. 91–15462 (9th Cir. Dec. 11, 1991).

On April 4, 1990, the plaintiff also purchased certificate of deposit No. 190001079 (Certificate No. 3) from Mission Savings and Loan in San Antonio, Texas (Mission), in the amount of $99,000.00. Certificate No. 3 maintained a simple interest rate of 8.15 percent, with interest distributions by monthly checks, and had a scheduled maturity of October 3, 1990. Mission closed, however, prior to the date of maturity. On May 4, 1990, OTS closed Mission, and the RTC was appointed to resolve all claims against the financial institution. On the same day as the closure, Ms. Maggie Escoto of the RTC contacted the plaintiff by mail, advised him that OTS had ordered the closure of Mission, and recommended that he file an administrative claim for recovery of any principal and interest. Nevertheless, on May 25, 1990, the plaintiff filed suit in the United States District Court for the Eastern District of California against Mission for principal and interest as well as against Ms. Escoto, in her role as a Government agent, for failure to redeem the disputed certificates in a timely manner. Again for jurisdictional reasons, and citing the Tucker Act, 28 U.S.C. § 1491 (1988), the District Court dismissed the suit on May 23, 1991. *Overton v. United States*, Civ. No. S–91–143 EJG (E.D.Cal. May 23, 1991).

After the District Court's dismissal, the plaintiff filed a suit in this Court on June 10, 1991. In that action, the plaintiff reit-

erated the two prior district court suits by seeking recovery from the United States, as well as against Mr. Fordice, for the principal and interest from the Sun County certificates and from the United States, as well as against Ms. Escoto, for the principal and interest from the Mission certificate. Because the plaintiff had filed a suit with similar issues pending in another federal court, pursuant to the outstanding appeal of the initial district court case in the Ninth Circuit, this Court dismissed the case without prejudice pursuant to 28 U.S.C. § 1500 (1988). *Overton v. United States*, No. 91–1212C (Cl.Ct. July 17, 1992). In that order, this Court admonished the plaintiff:

> [I]t is the duty of the plaintiff to submit an appropriate administrative claim pursuant to the appropriate federal regulations to the Government (RTC) so that the matter can be handled in an expeditious and administratively appropriate manner. To the extent that the plaintiff does not follow the appropriate administrative claim procedure, he may run afoul of the legal doctrine having to do with the exhaustion of administrative remedies (ripeness), which could deprive the plaintiff of a hearing on the merits in any later court action.

*Id.* at 6. Despite these warnings, the plaintiff nevertheless demonstrates a continued predilection to resolve judicially what belongs in the administrative realm. Indeed, although the RTC has already compensated the plaintiff for all three certificates of deposit, including the entire principal as well as the interest for the term from the date of deposit to the date of default of the respective financial institutions, the plaintiff renewed his suit in this Court on December 22, 1992. In the present case, however, the plaintiff acknowledges that he has already received his principal and interest to the date of default and is now requesting interest from the date of default to the present. He is also seeking recoupment of interest on a check from Mission which was issued to him prior to default but was dishonored when presented for payment after default.

As for the general claim for outstanding interest, the plaintiff seeks recoupment of interest from the time of default of the respective financial institutions to the date of final payment of this interest (or to present). As for Sun County, OTS ordered the closure of the financial institution on May 31, 1990. Until that time, for Certificate No. 1, the plaintiff had received interest payments in monthly disbursement checks and maintained a savings balance of $17,115.18 in principal and $232.69 in interest. On June 14, 1991, the RTC paid the plaintiff the savings balance of $17,347.87 (principal and interest to the time of default). In the plaintiff's complaint, regarding Certificate No. 1, the plaintiff nevertheless seeks to recoup additional interest not merely from May 31, 1990 (the date of default), through June 14, 1991 (the date of payment), but from May 31, 1990, to the present. Similarly, the plaintiff makes like claims regarding Certificate No. 2. As for Certificate No. 2, however, the plaintiff had not received interest payments in monthly disbursement checks but interest accrued until maturity. Thus, by the time of closure of Sun County, the plaintiff not only maintained a savings balance of $15,006.58 in principal but also some $1,111.51 in interest had accumulated. Thus, on June 14, 1991, the RTC paid the plaintiff the savings balance of $16,178.09 (principal and interest to the time of default). In the plaintiff's complaint, regarding Certificate No. 2, the plaintiff again seeks the interest not merely from May 31, 1990, through June 14, 1991, but from May 31, 1990, to present. Finally, the plaintiff makes the same claim regarding Certificate No. 3. OTS ordered the closure of Mission on May 4, 1990. Until that time, for Certificate No. 3, the plaintiff had received a single interest payment by a monthly disbursement check and maintained a savings balance of $99,000.00 in principal and $22.10 in interest. On January 22, 1991, over six months later, the RTC paid the plaintiff the savings balance of $99,022.10. In the plaintiff's complaint, regarding Certificate # 3, the plaintiff once again seeks the interest, not merely from May 5, 1990, through January 22, 1991, but from May 5, 1990, to the present. There-

fore, in the case of each certificate, the plaintiff claims entitlement to interest not only for the term from the time of default to the time of payment but from the date of default to present. Computing the interest on these certificates to June 1, 1993, the plaintiff alleges entitlement of $23,143.01 in outstanding interest.

As for the specific claim for interest due and owing, the plaintiff also seeks recoupment of $663.17 for a disbursement by monthly interest check issued by Mission for Certificate No. 3 before it defaulted, but because the disbursement was presented for payment following the closure of the financial institution, the check was consequently denied. As the defendant admits in its briefings, and reiterates in a response to an accounting ordered by this Court, the plaintiff is due the amount but has repeatedly refused to comply with the administrative prerequisites for remittance of this sum from the RTC. Prior to default, Mission had issued a monthly interest check on May 4, 1990, for the interest period during April of 1990, but by the time the plaintiff had presented the check, the OTS had closed Mission and the check was returned. As the plaintiff admits, Ms. Escoto of the RTC subsequently contacted the plaintiff, providing information on the procedures for recoupment of the outstanding interest disbursement. Ms. Escoto also informed the plaintiff that, in order for the RTC to compensate the plaintiff, the RTC required surrender of the original interest check. When the plaintiff refused to comply, the RTC provided further instruction:

> With regard to the check that was returned, we will not issue a replacement check until the returned check is sent to us. This assures us it will not be presented for payment a second time in the future.

> If your concern is that they will be lost, you can send them by certified mail, signed receipt requested. Or you may choose to Federal Express them to us and if you elect to enclose a Federal Express envelope with your account number on it and marked "Bill to Receiv-

er", we will be glad to Federal Express the checks back to you.

Letter from Ms. Judy Miller–Hankins, Department Head, Claims/Settlement, RTC, to Mr. Bill Max Overton (Aug. 22, 1990). To date, however, the plaintiff continues to refuse to comply with the RTC administrative procedures. As a result, the defendant requests dismissal of the claim for the outstanding interest check for reason of the plaintiff's failure to exhaust administrative remedies.

In sum, the plaintiff here claims interest generally, for the interest due on the subject certificates of deposit from the time of default of the issuing financial institutions to the present, and specifically, for the recoupment of a $663.17 monthly interest check. Citing the regulations of the Federal Deposit Insurance Corporation (FDIC), as adopted by the RTC, the defendant cites specific statutory authority which clearly delineates the durational scope for the Government's provision of insurance as to principal and interest liability for individual's accounts in the member financial institutions of the FDIC or the Federal Savings and Loan Insurance Corporation (FSLIC). As the defendant points out, moreover, these regulations extend protection for interest only until the time of the institutional default. Citing the administrative claim procedures of the RTC, moreover, the defendant likewise distinguishes the plaintiff's failure to follow administrative procedures regarding recoupment of the Mission interest check at issue. Consequently, the defendant disclaims the liability for any interest outstanding for the term following the default of Sun County and Mission.

For the foregoing reasons, on March 22, 1993, the defendant filed its present motion.

### *Discussion*

The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub.L. No. 101–73, 103 Stat. 183, established the RTC as an instrumentality of the United States. 12 U.S.C. § 1441a(b)(1)(B) (Supp. I 1990). FIRREA also delineated the duties of the RTC, in-

cluding the resolution of all cases involving the accounts insured by the FSLIC and other accounts for which a conservator or receiver had been appointed. 12 U.S.C. § 1441a(b)(3)(A)(i–ii). FIRREA moreover declared the powers of the RTC, granting the agency with the same powers and rights as the FDIC. 12 U.S.C. § 1441a(b)(4). Furthermore, FIRREA empowered the RTC with the authority to adopt and issue necessary rules, regulations, standards, policies, procedures, guidelines, and statements. 12 U.S.C. § 1441a(b)(11)(A). For the interim period prior to the formal adoption and issuance of such, however, FIRREA provides:

> Until such time as the Oversight Board and the Corporation (consistent with paragraph (6) and subsection (b)(12) of this section) adopt strategies, policies, goals, regulations, rules, operating principles, procedures, or guidelines, the Corporation may carry out its duties in accordance with the strategies, policies, goals, regulations, rules, operating principles, procedures, or guidelines of the Federal Deposit Insurance Corporation, * * *.

12 U.S.C. § 1441a(a)(7). As such, for the issue of the case at bar regarding the term of interest liability for the period of time after the default of the subject financial institutions, the defendant proffers, and this Court accepts, the regulations of the FDIC as controlling. *See generally Resolution Trust Corp. v. Mayor, Day, Caldwell & Keeton,* 794 F.Supp. 18, 19 (D.D.C.) (referencing the adoption of FDIC regulations by the RTC pursuant to section 1441a(a)(7)), *vacated, in part, and dismissed on other grounds,* Misc. No. 92–204(CRR), 1992 U.S.Dist. LEXIS 19,548 (D.D.C. July 24, 1992).

■ In the case at bar, the plaintiff claims entitlement to interest from the date of default of Sun County, for Certificates No. 1 and No. 2 to the present date, and from the date of default of Mission, for Certificate No. 3 to the present date. Less the remittance already made by the RTC for the entire principal and interest until the date of default, the plaintiff claims

entitlement of at least $23,143.01. As the defendant points out, however, the plaintiff fails to provide a specific factual or legal basis for this interest claim. In other words, the plaintiff has demonstrated no waiver of sovereign immunity. *See United States v. Mottaz,* 476 U.S. 834, 841, 106 S.Ct. 2224, 2229, 90 L.Ed.2d 841 (1986) ("When the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction."). Indeed, the United States Supreme Court has specifically ruled on the scope of jurisdiction regarding interest claims against the United States:

> As sovereign, the United States, in the absence of its consent, is immune from suit. This basic rule of sovereign immunity, in conjunction with the requirement of an agreement .to pay interest, gave rise to the rule that interest cannot be recovered unless the award of interest was affirmatively and separately contemplated by Congress.

*Library of Congress v. Shaw,* 478 U.S. 310, 315, 106 S.Ct. 2957, 2961, 92 L.Ed.2d 250 (1986) (citations omitted). The United States Court of Appeals for the Federal Circuit has likewise repeatedly affirmed the *Shaw* precedent: "In *Shaw,* the Supreme Court held that Congress must expressly waive the Government's sovereign immunity from suits for interest payments before claimants can recover interest or delay damages." *Doyle v. United States,* 931 F.2d 1546, 1550 (Fed.Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 866, 116 L.Ed.2d 772 (1992). The rulings of this Court have displayed similar consistency. *See, e.g., Short v. United States,* 25 Cl.Ct. 722, 724 (1992); *Pender Peanut Corp. v. United States,* 21 Cl.Ct. 95, 96 (1990); *Jetco, Inc. v. United States,* 11 Cl.Ct. 837, 850 (1987). Thus, despite the plaintiff's repeated protestations, a party may seek recoupment of interest from the RTC, the FDIC, or otherwise, only as far as Congress allows.

■ As a result, under the circumstances of the case at bar, the plaintiff presents no evidence of a waiver of sovereign immunity and thus no basis for an

interest claim in this Court. *See Ulmet v. United States,* 19 Cl.Ct. 527, 532 (1990) ("Express consent to the payment of interest must be found in either a special statute or an express contractual provision."). In fact, the defendant presents specific evidence to the contrary. As set forth in the regulations of the FDIC, the amount of deposit for which a depositor may claim coverage following the default of a financial institution extends only as follows:

> The amount of a deposit is the balance of principal and interest unconditionally credited to the deposit account as of the date of default of the insured depository institution, plus the ascertainable amount of interest to that date, accrued at the contract rate (or the anticipated or announced interest or dividend rate), which the insured depository institution in default would have paid if the deposit had matured on that date and the insured depository institution had not failed.

12 C.F.R. § 330.3(i)(1) (1993). As such, this Court finds the regulation clear that the Government maintains *no* liability for interest which accrues *after* the default of a financial institution. *See Lawson v. Fleet Bank of Maine,* 807 F.Supp. 136, 142 (D.Me.1992) (computing interest liability only to the date of default of the financial institution pursuant to section 330.3(i)(1)). Therefore, as to the plaintiff's claim for general interest for the term following the default of the subject financial institutions, this Court grants the defendant's motion to dismiss.

■ In this case, the plaintiff also claims entitlement to $663.17 for the recoupment of an interest check which had been denied following the default of the financial institution (Mission) which issued Certificate No. 3. In fact, the defendant admits liability on the merits, but maintains that the plaintiff has failed to adhere to the administrative procedures for the recoupment of this sum. In short, the defendant asserts that the plaintiff has failed to exhaust the available administrative remedies, and this Court concurs. Despite the apparent ambiguity surrounding the exhaustion doctrine, *see Minority Media of Pahrump, Inc. v.*

*United States,* 27 Fed.Cl. 379, 379 (1992) (referencing the "lack of clear distinctions between the concepts of failure to exhaust administrative remedies, lack of finality, and ripeness"), the doctrine applies here. In the instant case, an employee of the RTC contacted the plaintiff on the very day that the OTS closed the financial institution which issued the interest check and informed the plaintiff of the administrative procedures to recoup payment on the check. One condition of the administrative procedures was the surrender of the original interest check, but the plaintiff has continued to refuse to abide by these procedures. Thus, solely because of his own obstinence has the plaintiff heretofore not received remuneration for the interest check. If the plaintiff refuses to follow the appropriate rules, however, this Court will not (and cannot) create a special exception. Thus, just as this Court may not take jurisdiction over the interest claim without a waiver of sovereign immunity, this Court may likewise not take jurisdiction over the instant claim where the plaintiff has failed to exhaust his available administrative remedies. *McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969); *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). Accordingly, as for the claim for specific interest relating to the interest check, this Court also grants the defendant's motion to dismiss.

### CONCLUSION

For the reasons outlined above, this Court grants the defendant's motion to dismiss, and the plaintiff's complaint will be dismissed. Furthermore, any continued pursuit of these interest matters in this Court by this plaintiff, without first following the appropriate administrative procedures, will invite judicial sanctions.

Costs to the prevailing party.